[No. 15050. Department One. December 28, 1918.]

## J. L. PICKERING *et al., Appellants,* v. VICTOR A. ROEDER *et al., Respondents.*[1]

EVIDENCE (153)—PAROL TO VARY WRITING—RECEIPT. A receipt or release is not a contract or evidence of a contract and may be explained or contradicted by parol evidence.

ASSIGNMENTS FOR BENEFIT OF CREDITORS (30)—SECURED CLAIM—RELEASE—EFFECT UPON COLLATERAL. Where an assignment for the benefit of creditors provided that it was in full settlement of claims and that an acceptance of benefits would constitute a full release, collateral security held by a creditor is not released by the creditor's receipt stating that it was given in consideration of sharing in the proceeds *pro rata* with other creditors, and granting a complete release of all indebtedness. ·

SAME (30). A lawful priority, established by pledging collateral at the time a loan was made, is not waived or released by accepting dividends from a subsequent assignee for the benefit of creditors, in the absence of acts showing a clear intention to do so.

SAME (30). Where a secured creditor accepted dividends on his entire claim at the request of the owner of the collateral, and creditors had knowledge thereof and took no steps to protect their rights, it was to the advantage of the owner of the collateral, who cannot assert that the collateral was thereby released.

Appeal from a judgment of the superior court for Whatcom county, Brawley, J., entered March 20, 1918, upon findings in favor of the defendants, in an action for equitable relief, tried to the court. Affirmed.

[1]Reported in 177 Pac. 321.

*R. W. Greene,* for appellants.
*Sather & Livesey,* for respondents.

TOLMAN, J.—In April, 1913, appellant J. L. Pickering, who had theretofore been one of the stockholders of the Pickering Hardware Company, a corporation, acquired all of the capital stock of that corporation, for which purpose he borrowed $7,700 from respondent, and evidenced the debt by a note for that amount, signed by the corporation and by himself individually, and pledged as collateral security therefor 250 shares of the corporate stock. In February, 1916, respondent made a further loan of $2,500, evidenced by a note for that amount, also signed by the corporation and by Pickering, and as collateral security therefor, Pickering assigned to respondent a life insurance policy, a real estate contract covering the property occupied by him as a homestead, gave a bill of sale of an automobile, and deeds covering two pieces of real estate which belonged to the corporation. In February, 1917, the corporation was without funds to pay its obligations in the ordinary course of business, and after some unavailing negotiations looking toward the taking over of the business by the respondent and the settlement by him of the claims of other creditors, an assignment was made by the corporation and by Pickering to the Seattle Merchants' Association. The assignment was in the usual form, except that it was therein provided:

"It is understood and agreed that all creditors shall accept the proceeds of this assignment in full settlement of their accounts, and their acceptance of benefits hereunder shall constitute a full release."

And, also, the assignment purported to convey to the assignee all of the property of the assignors, excepting only the homestead here in controversy, and

household goods and wearing apparel exempt by law. Pickering surrendered no property under the assignment, excepting only the 250 shares of the capital stock of the corporation pledged to respondent as security for the $7,700 note; and the only apparent purpose of his joining in the assignment was to secure a discharge from the obligations which he had assumed on behalf of the corporation. The assignment was drawn by respondent's attorney, but respondent was in California at the time and had no personal knowledge of the provisions therein contained which have just been pointed out. After respondent returned from California, and while confined to his home by illness, he, on March 21, 1917, executed proof and assignment of his claim to the assignee, and a formal release of J. L. Pickering, as follows:

"In consideration of the assignment of Pickering Hardware Company and J. L. Pickering of all their assets not exempt from execution to Seattle Merchants' Association, a corporation, for the benefit of creditors, and in further consideration of our sharing in the proceeds of said assignment *pro rata* with the other creditors in the order of priority provided by law, the undersigned hereby grants to said J. L. Pickering a complete release from all indebtedness to the undersigned.

"Dated at Bellingham, Wash., this 21st day of March, 1917.                    Victor A. Roeder."

These instruments appear to have been prepared and sent to respondent by the assignee, and to have been executed without reading or other examination, upon the supposition that they were purely formal. During all of this time, and until the sale of the merchandise assets to others some time later, it appears to have been understood between Pickering and respondent that, if the merchandise assets could be purchased from the assignee at a satisfactory price, re-

spondent should buy them, and a new business enterprise should be organized in which both Pickering and respondent should be interested.  Early in May the merchandise was sold to others at a price above that which respondent was willing to pay, and shortly thereafter Pickering for the first time asserted a right to the collateral which he had pledged to secure the payment of the $2,500 note, and demanded its return to him.  The demand was refused.  Respondent, about that time, received from the assignee a dividend of forty per cent upon his claims, and Pickering then brought this action to recover the collateral.  By way of defense and counterclaim, respondent demanded the foreclosure of his lien upon the collateral and a judicial sale thereof.  From a judgment in favor of respondent, this appeal is prosecuted.

Appellant contends that the assignment and release by respondent, being written instruments, cannot be varied by parol testimony, and that the two construed together show an absolute discharge of the debt which the collateral was given to secure, and if the debt is discharged, the collateral is thereby released.  Where a written contract is ambiguous or obscure in its meaning, the surrounding circumstances may always be inquired into for the purpose of ascertaining what was within the contemplation of the parties and what the contract is.  *Pennsylvania Mtg. Inv. Co. v. Simms,* 16 Wash. 243, 47 Pac. 441.  But, in any event, a receipt or release is held not to be a contract or evidence of a contract, and may be explained or contradicted by parol evidence.  *Allen v. Tacoma Mill Co.,* 18 Wash. 216, 51 Pac. 372.

The trial court, apparently having these principles in mind, received evidence of all the surrounding circumstances, and of various conversations and interviews, in which it is claimed appellant, after the as-

signment, recognized respondent's right to the collateral. But in our view of the case, this evidence is largely immaterial. If respondent be held to be a party to the assignment and bound by its terms, then what is the meaning of the clause providing that an acceptance of benefits shall be a full release? Clearly it is not intended that all debts shall be discharged by the execution of the assignment, as that result is denied by the words "acceptance of benefits." And there can be no doubt that the debt exists for the purpose of participating in all dividends, and if the debt exists for that purpose, there being nothing in the assignment inconsistent therewith, it also exists for the purpose of exhausting all collateral pledged prior to and antedating the assignment. So accepting the rule that the terms of a written instrument cannot be varied by parol evidence, the fact that the deed of assignment does not by its terms, or by necessary implication, require the creditor to surrender his previously acquired collateral before participating in the benefits of the assignment, or at any other time, or at all, is fatal to appellant's cause. Nor does the release add anything to the terms of the assignment. There was no consideration for it except the assignment. It was executed only to comply with the terms of the assignment. It was not even delivered to appellant, but was filed with the assignee as showing acceptance of the assignment by respondent. In any event, it does not purport to be a surrender or release of the collateral, and no surrender of the collateral was ever made.

But if it be argued that, in the preamble of the assignment, the intention to avoid the previously given collateral is to be inferred from the recital: "Whereas said assignors desire to pay each of their creditors equally and ratably and without the intervention of

legal proceedings, and without any priority of any kind other than that provided by law," the answer is equally plain. This collateral was pledged at the time the loan was made, when the corporation debtor was a going concern, and there is no hint that either the corporation or Pickering was then insolvent. The transaction when made was legal and enforceable, whether measured by the bankruptcy act or the trust fund theory, and being valid when made, it became a priority which all laws recognize. Such a lawful priority, we think, is expressly recognized by the language of the assignment above quoted, and if not, it is such a priority as can only be waived or released by some act or acts showing a clear intention so to do.

Some contention is made that respondent, by receiving dividends upon the full amount of his claim before having exhausted his collateral, has thus been unlawfully preferred. But aside from the fact that respondent appears to have followed this course at the request of appellant, and that it was unquestionably an advantage to appellant that he do so, because thereby the claim against the collateral was reduced by $1,000, it also appears that the creditors, who alone might complain, were fully advised of respondent's collateral before any dividend was paid; that respondent then surrendered the deeds covering the corporate real estate, which had also been pledged, and the creditors acquiesced in the situation and took no steps to protect their rights. The attempt to intervene, long after the case was tried in the court below, was not timely.

Finding no error, the judgment appealed from is affirmed.

MAIN, C. J., MACKINTOSH, CHADWICK, and MITCHELL, JJ., concur.