[No. 21881. Department One. July 12, 1929.]

ALBERT F. RENNEBOHM, *Respondent*, v. WILLIAM H. RENNEBOHM *et al., Appellants.*[1]

*S. A. Keenan,* for appellants.

*Tucker & Tucker* and *Hyland, Elvidge & Alvord,* for respondent.

[1]Reported in 279 Pac. 402.

TOLMAN, J.—Respondent instituted this action to quiet his title to certain real estate situated in Seattle, King county. The defendants, appellants here, are the sons of his deceased wife; the two first named by a former marriage, and the last named being the fruit of the marriage between the respondent and the deceased wife. The complaint, in addition to the usual allegations, sets up that the defendants have caused to be recorded in the office of the county auditor an instrument in writing which recites that respondent acquired record title to the property in question, as distributee of the estate of the deceased wife, by virtue of certain deeds from the defendants, which deeds the instrument declares to be null and void; and the complaint seeks the removal of the cloud thus created.

The defendants filed an answer and cross-complaint, to which a demurrer was sustained. Thereafter an amended answer and cross-complaint was filed, which was attacked by demurrer and a motion for judgment on the pleadings. This demurrer was also sustained and the motion for judgment granted, and from a judgment entered accordingly, the defendants have appealed.

The answer and cross-complaint, after denying the allegations of the complaint as to title in respondent, and admitting the filing for record of the instrument complained of, proceeds to set forth the relationship of the parties, the death of the wife and mother on February 6, 1917, intestate, her ownership, at the time of her death, of the property in question, in part as her separate estate, and her community interest in the remainder, the ages of the defendants at that time, the two older being past their majority, while the younger was a minor nineteen years of age. They further allege:

"That immediately after the death of defendants' mother, plaintiff conceived the fraudulent purpose of acquiring the complete title and possession of all the property, personal and real, including that described in plaintiff's complaint, to the entire exclusion of these defendants, and he then determined to do so by making such false and fraudulent promises and agreements to each of the defendants as might be necessary to induce and persuade him to deed and release to plaintiff all of the former's title to and interest in said property, and that after acquiring such complete possession and title to said property he would do with it what he pleased and ignore any interest or right of title of the defendants, or either of them, to any part of said property.

"Although defendants, William H. Rennebohm and Arthur J. Rennebohm, were only the step-sons of plaintiff, they, together with their half-brother and co-defendant in this case, Albert J. Rennebohm, have always accorded to plaintiff the respect and obedience ordinarily existing between father and sons; at, and at all times prior to their mother's death, they and each of them were on friendly and confidential terms with plaintiff; and nothing had occurred during their home life to cause them or either of them to question the honesty and faithfulness of the plaintiff as their father and at all times he had the full confidence and respect of each of them to the extent that neither of them would question or have the slightest suspicion of any promise or representation that he would make, but on the contrary, at all times herein mentioned, up to April, 1928, they, and each of them, reposed absolute confidence in him.

"That in pursuance of plaintiff's said fraudulent purpose to wrongfully procure from defendants and each of them their release of all their interest in said property, he approached defendants, and each of them, within a few days after the death of their mother with the determination and purpose of procuring deeds of the property described in plaintiff's complaint from defendants to him. Among other things he stated and represented to each of said defendants that the legal

and proper thing for them to do was to deed whatever interest they had in said real estate to him so that the title to all the real property would be clear in him and he could maintain a home thereon free and clear of all other title or liens and promised that if they would do so he would immediately execute a will devising to the said three defendants all of said property, that he would keep it free and clear of all incumbrances and liens until his death, and then it would go to said defendants in equal proportion free and clear of all liens and incumbrances. He further promised that if they would so deed the property to him, they could come and stay there and consider it their home just as they always had done. He further promised and agreed as a consideration for signing said deeds to carry a policy of life insurance upon his own life payable in equal proportions to the defendants in the sum of two thousand dollars ($2000) in the Knights and Ladies of Security, afterwards changed to 'Security Benefit Association,' which fraternal insurance company was then, ever since has been and now is a fraternal association fully authorized to issue life insurance policies in accordance with the laws of this state; and further promised and agreed, as a further consideration for the execution and delivery of said deeds, that he would not sell, incumber nor dispose of said property.

"Defendants further allege that at the time plaintiff procured them and each of them to execute and deliver said deeds, they and each of them had implicit confidence in plaintiff, relied solely upon his advice and counsel in everything they did concerning said transaction and believed him, relied upon his advice, and so did as he suggested in the signing and delivery of said deeds, as he prepared them, and referred to in plaintiff's complaint, at which time the plaintiff well knew that defendants and each of them relied upon his counsel and advice and believed everything he said to them concerning the property and the advisability of deeding it to him; and specially relied upon the promises and agreements set out in Paragraph V hereof as well as all other promises and agreements contained in other parts of this answer; and that had it not been for

their confidence in him and his agreements and promises aforesaid, they, nor either of them, would not have executed and delivered his deed to said property.''

Many of these allegations are repeated and amplified, and the cross-complaint proceeds:

''That on or about the 15th day of April, 1928, defendants and each of them, for the first time discovered that plaintiff wilfully and fraudulently deceived them in procuring said deeds, and that he intended to sell, mortgage and dispose of said real estate, and, that he never intended to hold and keep said property for them, as he agreed; and also learned, for the first time, that he was not carrying said life insurance policy as aforesaid and that he did not intend to comply with any of the said promises and agreements in relation to his preserving and keeping said real estate for life and then devising it to these defendants. And that nothing had occurred in the relationship between defendants and their father prior to April, 1928, to even arouse any suspicion of said fraudulent purpose in the procurement of said property or of his intention not to keep the property for them as hereinbefore stated.''

For a second cause of action, all of these facts are repleaded, and it is further alleged that, by virtue of the deeds so secured and wholly without the knowledge of the appellants, the respondent fraudulently procured a decree in probate distributing all of the property of the deceased wife to him. The prayer is that the deeds be set aside and canceled, and that the final decree in probate, so far as it affects the real property be vacated and set aside.

The first ground of attack upon this cross-complaint is that the transaction pleaded being a contract to hold the real estate in trust for the benefit of others, resting in parol, is void under the statute of frauds, and such contracts have been condemned by

this court. *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482.

It is true that such contracts are unenforceable, and if appellants were here seeking the enforcement of the oral contract, we could afford them no relief, but no such relief is now sought. On the contrary, instead of asking for enforcement, appellants seek only the cancellation of the deeds and of the decree founded thereon, on the ground that they were procured by fraud. Fraud vitiates every contract in which it is a procuring factor, and if it can be established by proof that the deeds were procured by fraud as alleged, we need look no further or inquire as to whether the consideration, had there been no fraud, could have been enforced.

Except for the statute of limitations, which will be later discussed, the situation is the same in legal effect as if an action to set aside the deeds had been brought immediately after they were delivered. The respondent apparently still has title to the property unincumbered. No third person's rights have intervened. If such an action had been presented, without waiting for or asking any performance, solely upon the ground of fraud in procuring the execution and delivery of the deeds, probably the idea that an express trust was involved would not have been urged by anyone. In the early case of *Rozell v. Vansyckle,* 11 Wash. 79, 39 Pac. 270, in discussing a similar issue this court said:

"We will consider these defenses in the order in which they were interposed; and first, then, as to the agreement between respondent and defendant Vansyckle being within the statute of frauds. The respondent contends not for the enforcement of the trust made in parol between himself and Vansyckle, but insists that the transaction raises a trust *ex maleficio,* which is not within the statute. In vol. 2 of Pomeroy's Equity Jurisprudence, § 1053, it is said:

." 'In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, *taking advantage of one's weakness or necessities,* or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same; . . . and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust.'

"We think that the transaction falls squarely within the purview of this authority, and that the rule laid down by Pomeroy has been generally adopted, and received the sanction of the courts without exception. *Brison v. Brison,* 75 Cal. 525 (17 Pac. 689, 7 Am. St. Rep. 189) ; 1 Story, Eq. Jur., § 187.

"The parol promise upon the part of Vansyckle, and upon which the plaintiff relied, was made in bad faith and with intent to deceive, and hence amounted to an actual fraud. It was made by him without any intention of performing it; and the construction which the statute of frauds has almost universally received is that it excepts from its operation trusts which arise from fraud, either actual or constructive. This we conceive to be the principle upon which the rule laid down by Pomeroy, Story and the other writers on the subject, rests."

This case was cited with approval in *Melbye v. Melbye,* 15 Wash. 648, 47 Pac. 16; and in *Arnold v. Hall,* 72 Wash. 50, 129 Pac. 914, 44 L. R. A. (N. S.) 349.

The *Rozell* case was again followed and approved in *Johnson v. Johnson,* 122 Wash. 117, 210 Pac. 382. See, also, *Perkins v. Allen,* 133 Wash. 455, 234 Pac. 25.

On reason and authority, we think the cross-com-

plaint states a cause of action against the deeds and also against the decree based thereon.

 That this is a direct attack on the decree, cannot be doubted, in view of our previous holdings. *Northwestern & Pacific Hypotheek Bank v. Ridpath,* 29 Wash. 687, 70 Pac. 139; *Donaldson v. Winningham,* 48 Wash. 374, 93 Pac. 534, 125 Am. St. 937; *Schmelling v. Hoffman,* 111 Wash. 408, 191 Pac. 618.

 Perhaps the most serious question is that of the statute of limitations. Appellants plead a non-discovery of the fraud until April, 1928. In view of the relationship of the parties and the confidence which sons usually have in their father, together with the father's non-action, we have here an almost perfect example of a self-concealing fraud.

Had the father conveyed or incumbered the property, appellants would have been obliged to take notice of what the public records disclosed. Here there was nothing of that character to put them upon notice of the fraud, and until the respondent chose to disclose his purpose by word or act, there seems to be no reason for the sons to have questioned his honesty and integrity of purpose. As against the demurrer, the allegations of nondiscovery which we have quoted are sufficient. *McDonald v. McDougall,* 86 Wash. 339, 150 Pac. 625; *Davis v. Rogers,* 128 Wash. 231, 222 Pac. 499; *Bates v. Glaser,* 130 Wash. 328, 227 Pac. 15.

The judgment is reversed, with directions to overrule the demurrer.

MILLARD, HOLCOMB, FULLERTON, and BEALS, JJ., concur.