[No. 22037. *En Banc.* April 21, 1930.]

M. EDNA KILBOURNE, *Appellant,* v. CLIO KILBOURNE, *as Executrix, Respondent.*[1]

[1]Reported in 287 Pac. 41.

440

*Joseph H. Griffin* and *George F. Hannan,* for appellant.

*Carkeek, McDonald & Harris* and *Stanley J. Padden,* for respondent.

HOLCOMB, J.—This is an action for damages for fraud and deceit stated in two counts.

On trial to the court and a jury, at the close of the evidence on behalf of appellant, a challenge interposed by respondent to the sufficiency of the evidence on several grounds was sustained by the court on the ground that both causes of action were barred by the statute of limitations. A motion for a new trial was overruled and a judgment of dismissal entered.

An outline of the nature of the case may be had from a brief summary of the pleadings.

During the month of September, 1928, Frank H. Kilbourne died testate at Seattle, leaving an estate in

King county, Washington, and nominating his widow, Clio Kilbourne, his executrix.

The complaint of appellant alleges that she and the deceased were husband and wife until on September 30, 1904, when they were divorced; that, at the time of the divorce, they made an oral agreement to settle their property rights on the basis of each party receiving one-half of all the property. At that time the deceased owned a one-third interest in the capital stock of the Cascade Laundry, a corporation, and a one-third interest in the stock of the Model Laundry, and by the agreement of settlement appellant became the owner of a one-sixth interest in the stock of each laundry. The evidence developed, however, that the parties owned as community property only a one-third interest of 14/15ths of the stock of the Model Laundry.

The complaint further alleged that, although appellant was the owner of such stock, nevertheless, she left it with the deceased as her trustee and agent for the purpose of collecting the dividends on all the stock and remitting them to her and generally representing her in the affairs of the companies. It was then alleged that appellant was inexperienced in business affairs and had great trust and confidence in the deceased in business matters; that the deceased acted as her trustee and agent from September, 1904, until April 22, 1910, during which period he collected in her behalf dividends of these laundries in the total sum of $53,700 and remitted to her dividends only in the sum of $21,-200, and concealed from her the existence of any other dividends which the companies had paid; that appellant was damaged in the sum of $32,500, with interest at six per cent from the respective dates of payments, interest amounting to $21,200, or a total of $53,700; that she did not discover the fraud that was perpetrated on her until about September, 1928.

The second count of the complaint, summarized, alleges that all the allegations contained in the first cause of action are adopted and made a part of the second cause of action; that on April 22, 1910, the deceased purchased from appellant all of her capital stock in both companies for the sum of $32,500; that the value of the stock at that time was not less than $75,000; that the deceased personally and through his duly authorized agent C. A. Kilbourne, misrepresented the value of the stock to appellant in that they stated that $32,500 was all the stock was worth, and that it had been paying dividends of no more than approximately $300 per month; whereas, in truth and in fact, it had been paying dividends for many years of approximately $750 per month; that appellant believed, relied upon, and sold her stock upon those misrepresentations and that she did not discover the deceit until September, 1928; that she at all times had great confidence in the deceased and in C. A. Kilbourne.

The answer denies the material allegations of both causes of action and affirmatively alleges that each cause is barred by the statute of limitations and by laches.

The reply denies the affirmative matter in the answer.

■ Appellant herself, being disqualified under our statute to testify as to the transactions had with the deceased as to the matters in controversy, was not offered as a witness. Much of the testimony as to the representations and the transactions between appellant and the deceased was given by a daughter of the deceased and of appellant by the marriage of the deceased with appellant. Notwithstanding the self-interest of that witness, as asserted by respondent, she was a competent witness and her credibility as such and the truth of her testimony was for the jury.

■ Aside from her testimony as to the representations made by the deceased to appellant, some important facts adduced at the trial, of which notice should be taken, are these:

Much of the evidence concerning the business profits and dividends of the two laundries was destroyed by a fire which it was claimed occurred in 1929 after this suit was instituted, so that some of the book evidence could not be produced. The account books of the Model Laundry for the period of 1904 to 1910 were destroyed many years ago. Dividend checks of the Model Laundry were likewise removed from their customary place of deposit at that time. In 1928, another laundry company purchased the Cascade Laundry and at that time, under the direction of the officers of the purchasing company, the account books except for the preceding six years were destroyed. However, appellant was able to produce from other sources certain financial statements and statements of dividends which those companies had paid during that period. The trial balances for the Cascade Laundry for the years 1909 and 1910 were also produced.

Under the foregoing circumstances, notwithstanding the objection by respondent at the trial and her argument on appeal, proof of compliance with Rem. Comp. Stat., § 3823, prescribing that dividends shall be declared by the corporate trustees, was impossible, appellant had the right, under such circumstances, to prove by the next best evidence, the profits and dividends of the laundry companies. According to the evidence of witnesses who were familiar with the business of those companies during those years, among them a brother of the deceased, the bookkeeper and another who made an examination of the affairs of the companies, it was shown that the Model Laundry paid dividends from and after August, 1906, with

the exception of the months of September and October of that year. The Cascade Laundry Company had always paid dividends. The dividends paid to deceased and Charles A. Kilbourne, also deceased at the time of the trial (a man of the same surname and a business associate, but of no kin to the deceased), were put in an account of their own which was called "Cascade Special."

Taken as a whole, the record fairly bears out a summary of the evidence produced at the trial, as stated by appellant, for the purpose of sustaining both causes of action, and not assailed by respondent except as to the legal effect of some of it and its legal sufficiency, to be in substance as follows:

(1) In 1904, at the time of the divorce, appellant and deceased entered into an oral agreement whereby they divided equally their stock interests in both laundry companies, and whereby appellant and the deceased each agreed to contribute $75 per month towards the support of the three children of the parties until the children were married, and that the stock in the laundry companies should remain under the control of the deceased, who agreed to collect and remit the dividends to appellant.

(2) That from September, 1904, to April 22, 1910, Frank H. Kilbourne acted as agent for appellant in collecting dividends. That he remitted to her the sum of $17,843.99 in dividends; that he actually collected for her as dividends the sum of $37,763.31 and that he failed to pay over to her during that period the sum of $19,919.32.

(3) That between January and April, 1910, F. H. Kilbourne requested C. A. Kilbourne to act as his agent for the purpose of negotiating the purchase of the stock of these two laundries with appellant.

(4) That C. A. Kilbourne, acting as such agent,

misrepresented the condition of the laundries in the following particulars:

(a) He stated to appellant that, since she had only been drawing dividends of $300 per month, it would be a better investment for her to get the money out of her stock and invest it in a certain hotel business that might earn $500 per month.

(b) He stated that the Model Laundry never had paid any dividends and that it was doubtful whether or not it ever would pay any dividends. It is shown that it had paid large dividends ever since 1906—more than $83,000.

(c) He stated that $30,000 was all Mrs. Kilbourne's stock was worth, when in truth it was worth between $75,000 and $100,000.

(5) He failed to state that in 1907 Frank H. Kilbourne and himself had purchased certain stock owned by C. P. Stone and had given a mortgage on the Cascade Laundry to secure the larger portion of the purchase price.

(6) According to the evidence, Frank H. Kilbourne personally misrepresented the facts as follows:

(a) He stated that $30,000 was all appellant's laundry stock was worth.

(b) He stated that the Model Laundry had never paid any dividends and the probabilities were that it never would pay any dividends.

(c) He advised appellant to sell out the stock in order to purchase a hotel lease, and pointed out to her the advantage that would accrue to her by receiving approximately $500 as income on the hotel as compared with her interest in the stock.

(d) He failed to tell her that in 1907 he and C. A. Kilbourne had jointly purchased the Stone stock interest and had mortgaged the Cascade Laundry to secure the larger portion of the purchase price. She

was never advised that her stock interest had been aug-mented in any way by the purchase of the Stone stock.

(7) That appellant did not succeed in the conduct of the hotel, the lease of which she purchased, and relinquished it after about two years, returning to Wyoming, where the family had formerly lived, in 1912, and from that time had been continuously out of the state of Washington up to the time of the trial.

(8) That appellant did not know, had no suspicion and had nothing to put her upon inquiry during all that period, that she had been defrauded either in the payment to her of dividends or in the sale of her stock, until September, 1928. She then received information through Fred C. Kilbourne, a brother of the deceased, who had never told anybody about the facts until after the death of Frank H. Kilbourne.

Upon the above showing, appellant insists that the court erred in sustaining the challenge to the sufficiency of the evidence upon the ground that each cause of action was barred by the statute of limitations or upon any other ground; erred in dismissing the action; and erred in denying her a new trial. Certain other errors are claimed and argued not necessary to mention now.

To the contrary, respondent asserts that the causes of action are barred by the statute of limitations and also by the long delay and laches of appellant. She also contends that the first cause of action consists of a void oral agreement establishing a trusteeship based upon and part of a collusive agreement for divorce which is illegal and against public policy; also because the agreement runs contrary to the statute of frauds; further, that the claim is barred by laches and the statute of limitations and appellant estopped from asserting it; and lastly, that there is no proof that the deceased ever collected or received any dividends belong-

ing to appellant which he was required to remit, which last has hereinbefore been decided as untenable.

As to the second cause of action, respondent contends that in 1910, when deceased bought the stock of both laundries belonging to appellant for $32,500, it being alleged that at that time he was trustee and agent for appellant and acting in a fiduciary relation for her and acting personally and through his agent C. A. Kilbourne, there is no proof that any fraudulent representations were made as to the value of the Cascade stock at that sale. It is further contended that appellant was guilty of laches in asserting her claim under the second cause of action; that she was barred by the statute of limitations; that there was no proof of the agency of C. A. Kilbourne for the deceased in making the alleged misrepresentations; and lastly, that there was a failure of proof in that there was no competent proof that the Model Laundry ever paid a dividend and hence no proof that the alleged representations were false, which last, as above stated, is untenable. It is also asserted by respondent that neither cause survives against the estate which is now the only party defendant.

Appellant insists that this is a law action for damages for deceit and fraud as to both causes. She contends that both causes of action are actions for relief upon the ground of fraud not discovered until shortly before the commencement of the action in 1928, and relies upon Rem. Comp. Stat., § 159, par. 4, which paragraph prescribes:

"An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud; . . ."

As to the first cause of action, it is manifest that it is an action for money had and received by the

deceased, with interest. *Byram v. Thurston County,* 141 Wash. 28, 251 Pac. 103, 252 Pac. 943; *Bosworth v. Wolfe,* 146 Wash. 615, 264 Pac. 413; *Gustafson v. Cullen,* 155 Wash. 107, 283 Pac. 1087.

If a fiduciary relation ever did exist between appellant and her divorced husband, the deceased, it manifestly ceased in 1910 at the time of the sale of the laundry stock. There could thereafter be no trust relations existing between appellant and him. Any cause of action then existing upon which she had a right to recover immediately matured. The statute of limitations therefore began to run from that time. *Wagner v. Law,* 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 28 Am. St. 56, 15 L. R. A. 784; *Morgan v. Morgan,* 10 Wash. 99, 38 Pac. 1054; *Cornell v. Edsen,* 78 Wash. 662, 139 Pac. 602, 51 L. R. A. (N. S.) 279; *Harvey v. Pocock,* 92 Wash. 625, 159 Pac. 771; *Golden Eagle Mining Co. v. Imperator-Quilp Co.,* 93 Wash. 692, 161 Pac. 848, L. R. A. 1917C 113; *Bradbury v. Nethercutt,* 95 Wash. 670, 164 Pac. 194; *Hutchinson Realty Co. v. Hutchinson,* 136 Wash. 184, 239 Pac. 388.

*Ackerson v. Elliott,* 97 Wash. 31, 165 Pac. 899, cited by appellant, is not in point here for the reason that there a trust existed, and because the land involved was acquired in trust, the statute of limitations was held not to run against the beneficiary of the trust so long as that trust relationship existed. Since we must conclude that the trust relation, if any existed, between appellant and her divorced husband ceased in 1910 *(Davis v. Rogers,* 128 Wash. 231, 222 Pac. 499), that case and others of the same type relied upon to some extent by appellant cannot apply here.

Since the remedy relied upon in the first cause of action existed as long ago as 1910, and appellant having sat inactive for eighteen years, long after any fraud

should have been discovered, when there was nothing but concealment on the part of her former husband, that cause of action became stale under either the statute of limitations or equitable laches.

While every case of this kind must depend largely upon the particular facts and circumstances shown to exist, in this case the facts and circumstances as to the first cause of action bring it within the application of our decisions in the following cases: *Hoy v. Burk,* 92 Wash. 536, 159 Pac. 701; *Johnston v. Spokane & Inland Empire R. Co.,* 104 Wash. 562, 177 Pac. 810; *Noyes v. Parsons,* 104 Wash. 594, 177 Pac. 651; *Davis v. Rogers,* 128 Wash. 231, 222 Pac. 499; *Teeter v. Brown,* 130 Wash. 506, 228 Pac. 291.

Hence, we conclude that the first cause of action has long been stale under either the statute of limitations or the long laches of appellant.

The second cause of action has stronger support than the first. While it necessarily depends to a large extent upon the showing as to the concealment of the dividends actually received from the laundry stock and the dividends remitted by deceased to appellant, which contention naturally affected the fraud and deceit as to the value of stock when appellant sold it in 1910, there was actual, positive fraud in the sale of the stock by the deceased and his agent C. A. Kilbourne. They then represented to appellant that the condition of the laundry companies and the amount of the dividends which they had been paying was such that the value of the stock was no more than the price which they represented to her they were willing to pay. By those representations and deceit she was defrauded. It will not do to say that it was a mere matter of opinion upon which appellant should have informed herself, and not relied upon the misrepresentations made

to her by the deceased and his agent. It was a matter of which they had especial knowledge and she did not, and could not well have.

In view of the relationship which had been sustained between the parties and the confidence alleged and testified to in her former husband by appellant at all times up to the time of the discovery of the fraud which had been perpetrated upon her, only by the disclosure of the brother of deceased, as to the second cause of action sued on, there was a *prima facie* case made on behalf of appellant under our decisions in such cases as *McDonald v. McDougall,* 86 Wash. 339, 150 Pac. 625; *Normile v. Denison,* 109 Wash. 205, 186 Pac. 305; *id.,* 116 Wash. 452, 199 Pac. 995; *Davis v. Rogers,* 128 Wash. 231, 222 Pac. 499; *Bates v. Glaser,* 130 Wash. 328, 227 Pac. 15; *Hahn v. Brickell,* 135 Wash. 189, 237 Pac. 305; *Rennebohm v. Rennebohm,* 153 Wash. 102, 279 Pac. 402.

Respondent contends that the cause of action does not survive, because the estate, now the only defendant, is not shown to have been unjustly enriched.

*Prima facie,* at least, appellants showed that the difference in the value of the stock purchased by the decedent from appellant and its real value was $40,800. As that was in 1910 and the estate grew to very great proportions after that, while in the hands of the deceased as an operating concern, no reasonable inference can be derived except that all that money went into the estate of the deceased and without doubt increased it and helped it to grow to its great extent. Assuredly, it was an enrichment of his estate, and if unjustly obtained by a fraud against her, the estate is as much liable for it as he would have been personally. The cause of action therefore survives against the estate. *Conaway v. Co-Operative Homebuilders,* 65

Wash. 39, 117 Pac. 716; *Bell v. Jovita Heights Co.,* 71 Wash. 7, 127 Pac. 289.

Consequently, we conclude from the *prima facie* showing as to the facts and the law applicable thereto that appellant made a case on the second cause of action which should have been submitted to the jury.

 Having so concluded, certain other matters occurring in the course of the trial and claimed as error should be considered. The court denied appellant the right to testify that she never had possession of the certificate of stock of the Cascade Laundry Co., which had been apparently issued in her name and receipted for by her; in connection with which an offer of proof was made to prove by appellant herself that she never had received the certificate nor had it in her possession, but that all the papers that were executed at the time of the divorce proceedings were signed by her in the office of an attorney named McCafferty and not in the presence of the deceased.

Since the offer of proof tended to show that the deceased was not present at the time appellant signed the purported receipt in the office of attorney McCafferty, she was not incompetent to testify concerning the same. *Kauffman v. Braillie,* 46 Wash. 248, 89 Pac. 548; *Bardsley v. Truax,* 64 Wash. 400, 116 Pac. 1075; *Engstrom v. Peterson,* 107 Wash. 523, 182 Pac. 623.

 And since a receipt or a simple release is not a contract or evidence of a contract, it is competent to explain or contradict it by parol evidence. *Allen v. Tacoma Mill Co.,* 18 Wash. 216, 51 Pac. 372; *Phelps Lumber Co. v. Bradford-Kennedy Co.,* 96 Wash. 503, 165 Pac. 376; *Pickering v. Roeder,* 104 Wash. 539, 177 Pac. 321.

Appellant was therefore competent to testify as offered, and the evidence should have been received.

The judgment is reversed and the cause remanded

for reinstatement and further proceedings upon the second cause of action stated in accordance herewith.

MITCHELL, C. J., MAIN, BEALS, FRENCH, MILLARD, and TOLMAN, JJ., concur.

FULLERTON, J. (concurring)—I concur in the conclusion of the court upon the first cause of action, but dissent to its conclusion on the second.

PARKER, J., concurs with FULLERTON, J.