[No. 26407. Department Two. December 23, 1936.]

MARY COLE, *Respondent*, v. HOPE UTLEY, *as Executrix, Appellant.*[1]

[1]Reported in 63 P. (2d) 473.

668

*Wm. A. Johnson* and *John B. Fogarty,* for appellant.

*G. D. Eveland* and *Clarence J. Coleman,* for respondent.

TOLMAN, J.—This action was instituted in February, 1935, by the respondent, as plaintiff, against her brother, E. B. McGill, seeking a recovery of money alleged to have been fraudulently withheld from her by McGill, who acted as her agent in the sale of a timber claim in the year 1907, it being alleged that the plaintiff had discovered the fraud only a short time before the action was commenced. The answer was made and verified by McGill during his lifetime and consisted of denials and a so-called affirmative defense to the effect that the matters referred to transpired more than twenty-five years before, and that the plaintiff had full knowledge and means of obtaining knowledge of all the details at the time of the sale.

Thereafter, the defendant McGill died. The executrix of his estate was substituted as defendant, and the cause proceeded to trial before a jury. A verdict was returned in favor of the plaintiff for the full amount claimed. A motion for judgment n. o. v. or, in the alternative, for a new trial was interposed and denied. Judgment was entered on the verdict, and from that judgment the defendant has appealed.

Three principal questions seem to be raised. (1) That the contract as pleaded was illegal, and that there was a variance between the cause of action pleaded and the one submitted to the jury; (2) that there is no competent evidence which will support a judgment upon any theory; and (3) that the action is barred by

the statute of limitations. We shall discuss these in their order.

(1) It is true that the complaint contained the averment that the plaintiff and the defendant and his wife jointly acquired three timber claims. This particular averment, if considered alone, might support the conclusion that the parties conspired to defraud the Federal government and to illegally acquire land under the Federal timber and stone act, but that averment did not stand alone, and the complaint, taken as a whole and construed in favor of the pleader, as must be done under our rule, does not support such a conclusion.

But, in any event, the evidence in the case was all to the effect that the respondent properly and lawfully acquired her land under the timber and stone act, and that thereafter she entered into an agreement with McGill and his wife that the three claims, belonging one to each, should be sold together as one tract and the proceeds of the whole be divided equally between the three owners. It is not suggested that such an agreement is unlawful. Since the complaint must be considered as amended to conform to the proof, there was no variance and no illegal contract.

(2) It is the rule of this court that, in actions involving fraud, the evidence must be clear, cogent and convincing upon every essential element of the charge. With that rule in mind, we have read and considered the entire record and are well satisfied that there was ample evidence to take the case to the jury.

(3) To toll the statute of limitations, the respondent pleaded, and her evidence tended to show quite clearly, that, at the time she acquired the timber claim and until long after the disposal of it, she placed full trust and confidence in her brother, relied upon him for advice in her business matters, and in the

matter of the sale of the claim she constituted him her agent and accepted his statements as to facts without question. In all things relating thereto, she followed his directions fully. At his request, she executed a deed in blank and authorized him to fill in the name of the purchaser. The consideration named in the deed which she executed was one dollar. The five thousand dollar check which she received had written on its face "For claim," and it is quite clear that, at that time, McGill gave her to understand that the check represented her full one-third of the purchase price of the three claims.

The only troublesome question is: Should she have investigated the matter for herself at some time before the late date when she received information which caused her to act?

We find in the record no hint of anything which would have put her on notice, and, in the absence of anything to cause the question to arise in her mind, we cannot say that she was at fault in continuing to trust her brother as she did. To hold otherwise would be to say that the actions of a trusted agent must always be investigated; and if there be such a duty, then the time to perform it would be as soon as the agent's act was completed.

But, again, it seems to be contended that this is not an action based on fraud, but rather one for money had and received, such as was considered in the case of *Kilbourne v. Kilbourne,* 156 Wash. 439, 287 Pac. 41. That holding is, however, based upon the express finding:

"If a fiduciary relation ever did exist between appellant and her divorced husband, the deceased, it manifestly ceased in 1910 at the time of the sale of the laundry stock."

Here there is no fact established from which the in-

ference flows that the fiduciary relation ever did cease until Mr. McGill died.

■ It seems apparent that the act of misrepresenting the sale price and the retaining of a part which belonged to the sister who trusted him was a fraudulent act under all the legal definitions of which we have knowledge.

"Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another. Fraud has also been defined as any cunning or artifice used to cheat or deceive another. However, the wisdom of an exact legal definition of fraud has been questioned." 26 C. J. 1059.

■ It is also argued that the time which elapsed should raise a presumption of payment. 48 C. J. 690 *et seq.* The rule thus referred to seems to relate to admitted contract indebtedness and not at all to money secretly and fraudulently retained of which the true owner has no knowledge. But, at any rate, the rule

". . . does not, however, create an absolute bar . . . indeed, the presumption does not arise, or is completely destroyed, where the fact of nonpayment is admitted or proved." 48 C. J. 692.

So here, while the answer admits nothing, it does not plead payment, and the proof clearly showed nonpayment.

We find no error in the admission and exclusion of evidence.

■ The errors assigned upon the instructions given and refused are not argued in the brief, nor were they argued orally, and there seems no reason why we should consider them.

The judgment is affirmed.

MILLARD, C. J., HOLCOMB, MITCHELL, and BEALS, JJ., concur.