[No. 32311. Department One. April 15, 1953.]

JOHN E. CERKONEK et al., Appellants, v. SELMA DIBBLE, as Executrix, Respondent.[1]

[1]Reported in 256 P. (2d) 488.

*Rummens, Griffin & Short* and *Paul R. Cressman,* for appellants.

*John Hancock,* for respondent.

HILL, J.—This is an action against the estate of Carl E. Tideman, deceased, on the theory that, by reason of a fraudulent misrepresentation by Mr. Tideman in his lifetime, his estate has been unjustly enriched. The alleged fraudulent misrepresentation was that there were sixty acres under irrigation on a 385-acre ranch which Albin P. Cerkonek and Anna Cerkonek, husband and wife, and their son, John E. Cerkonek, who are the plaintiffs in this action, acquired from Tideman in a trade-sale transaction. Plaintiffs allege that only twenty-nine acres were under irrigation.

The Cerkoneks and Tideman signed an agreement May 23, 1949, to exchange properties. The Cerkonek property was thirty-five acres in King county and the Tideman property was the 385-acre ranch heretofore referred to, located in Okanogan county. The agreement recited that the Tideman property was worth thirteen thousand dollars more than the Cerkonek property. Thereafter, a contract was entered into by Tideman and the Cerkoneks, dated June 9, 1949 (acknowledged by Tideman on that date, but the exact date of the signatures of the Cerkoneks is not definitely established), whereby Tideman agreed to sell and the Cerkoneks agreed to buy the Tideman property for nineteen

thousand dollars, which contract recited that six thousand dollars had been paid and that the unpaid balance of thirteen thousand dollars was to be paid,

". . . $1000.00 on or before September 1, 1950 and a like sum on or before September 1, 1951 and each succeeding year until the full principal balance is paid."

(We infer that the six-thousand-dollar down payment was represented by the conveyance of the Cerkoneks' King county property to Tideman.)

The Cerkoneks moved onto the Okanogan property immediately but did not farm it in 1949. They state that by the fall of that year they knew that there had been a misrepresentation as to the number of acres under irrigation. In 1950, they put in a crop and made the payment due September 1st. Following the death of Tideman on April 28, 1951, they filed a claim against his estate for nine thousand dollars, which was rejected. Within thirty days thereafter this action was commenced. (Although the Cerkoneks' right to recover must rest on this claim, it was neither set out in the pleadings nor introduced in evidence, and the basis of the claim was neither alleged nor proved. We assume, since no issue is made of the matter by the executrix, that the claim and the complaint are based on the same theory.) The trial court, having found that the Cerkoneks had established neither fraud nor unjust enrichment, dismissed the action. The Cerkoneks appeal.

On this appeal, they urge that the evidence established that there were only thirty-one acres of irrigated land and that, if the other twenty-nine acres had been irrigated, the property would have been worth an additional $8,410, and they ask that we direct the entry of a judgment in that amount.

Tideman being dead and RCW 5.60.030 (cf. Rem. Rev. Stat., § 1211) having been invoked, the Cerkoneks could not testify as to transactions or conversations with the decedent. The testimony relied upon as to the misrepresentation was that of Helen Edwards and A. J. King. The latter, the key witness in the case, whose deposition was taken in

Denver, was a real-estate salesman employed from February, 1948, to May, 1950, by Volney P. Evers, a Seattle realtor.

King testified several times that, in 1948, when Tideman listed his property with Evers, he (King) took the listing, and Tideman told him there were sixty acres under irrigation; that he (King) advised the Cerkoneks that there were sixty acres under irrigation; and that Tideman verified that statement in the presence of the Cerkoneks when they went over to look at the Tideman ranch in May, 1949, before they entered into the exchange agreement.

Two assignments of error relate to evidentiary questions which have their genesis in King's testimony. He identified plaintiffs' exhibit No. 1 for identification as a form listing card used in the office of Volney P. Evers, and testified that the words "60 acres under Erigation" and other information concerning the Tideman ranch were typewritten thereon by him when Tideman came into the Evers office to list the property, that he read it back to Tideman and then gave him a copy of it. All of the material statements on the card are in the record as part of King's testimony. The card is claimed to be admissible under the "uniform business records as evidence act," RCW 5.44.100 to 5.44.120, inclusive (cf. Rem. Supp. 1947, §§ 1263-1 to 1263-3, inclusive).

RCW 5.44.110 is as follows:

"A record of an act, condition, or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

■ If the card was a part of Volney P. Evers' business records from the date of the listing until the time it was removed therefrom to be used as evidence in this case, it would be corroborative of King's testimony and would establish that his statement that Tideman said there were sixty acres under irrigation was no recent fabrication. However, there was no evidence by a "custodian or other qualified wit-

ness" that the card was part of the records in Volney P. Evers' office. There is no word of explanation as to where it came from; for all we know, King himself may have produced it. Its authenticity and accuracy are therefore on exactly the same plane as the rest of King's testimony, and the card prepared by him could add nothing. The court did not err in refusing to admit appellant's exhibit No. 1 for identification.

The other assignment of error based on King's testimony relates to the striking of the second sentence from an answer by him in his deposition. The sentence stricken obviously was not responsive to the question, which had been completely answered in the first sentence. Moreover, the statement claimed to have been erroneously stricken came into the record on at least two other occasions and so was before the court. There is no merit in this assignment of error.

Helen Edwards, the other witness who testified concerning the alleged misrepresentation, is a daughter of Albin and Anna Cerkonek. She testified that Tideman, in her presence and that of her parents, while he was in their home near Fall City before they had seen the Okanogan property or entered into the exchange agreement, said there were sixty acres under irrigation.

It is clear that if Tideman made that statement it was false and he must have known it to be false. The evidence indicates that the amount actually being irrigated at that time was at most thirty to thirty-five acres, and testimony on behalf of the respondent indicated that Tideman himself believed the amount that could be irrigated was between thirty-five and forty acres. There was other evidence that 50.3 acres could be irrigated from the irrigation ditch on the property.

■ Appellants repeatedly emphasize that their evidence as to the making of the alleged misrepresentation was uncontradicted. Under the circumstances here existing, this adds nothing to its weight or convincing character; the only person who could contradict it was dead. We know of no rule that the trier of the facts must believe uncontradicted

testimony concerning misrepresentations claimed to have been made by a person since deceased.

■ ■ And we have repeatedly held that the burden is upon the person who alleges fraud to establish it by evidence that is clear, cogent, and convincing. *Mathewson v. Carlson,* 13 Wn. (2d) 363, 125 P. (2d) 272 (1942); *Saunders v. Visser,* 20 Wn. (2d) 58, 145 P. (2d) 898 (1944); *Ramsey v. Mading,* 36 Wn. (2d) 303, 217 P. (2d) 1041 (1950); *Michaelson v. Hopkins,* 38 Wn. (2d) 256, 228 P. (2d). 759 (1951). Our study of the record does not satisfy us that the trial judge should necessarily have been convinced. At the conclusion of our reading of the record, questions remained in our minds which the evidence had not removed and which prevented our being completely convinced that Tideman had made a fraudulent misrepresentation, such questions as:

Why did the Cerkoneks make the 1950 payment and delay for almost two years after they moved onto the Okanogan property and until after Tideman's death, to make an attack upon the transaction? (They say in their reply brief that the matter had been taken up with Tideman in his lifetime, but this is not part of the record and was not before the trial court, and is not properly before us.)

If exhibit No. 1 for identification was a business record of Volney P. Evers, made in 1948, how did it get to Denver in February, 1952, at the time King's deposition was taken? Had it been in his possession before his deposition was taken, and if so why?

Why would Tideman have made a misrepresentation which was so palpably and demonstrably false? Wasn't it more likely that if he said sixty acres he used the words "irrigable" or "under the ditch" rather than "irrigated"?

Appellants contend that even if, as suggested, Tideman did say "irrigable" or "under the ditch," the evidence at best shows only 50.3 acres of irrigable land and a misrepresentation as to at least 9.7 acres, and, therefore, they are entitled to recover at least twenty-eight hundred dollars, that being the additional amount the 9.7 acres would have been worth had it been as represented.

It does not follow that the damages to which the appellants might be entitled for the loss of their bargain had they sued for damages for fraud would constitute an unjust enrichment so far as the Tideman estate is concerned. The only authority cited by appellants to support their contention is *Salter v. Heiser,* 39 Wn. (2d) 826, 239 P. (2d) 327 (1951), which is not an unjust enrichment case and casts no light upon what the measure of recovery should be.

Any action against an executor or administrator based on fraud of a decedent must fall within one of the well recognized classes of survivorship.

" . . . such as where a tort may be waived and the suit brought in quasi contract; where a right of rescission exists; where specific property passed to the deceased upon a trust; where the action is one of recognized equity jurisdiction, or where the estate of the deceased has been directly enriched by the fraud complained of." *State ex rel. Baeder v. Blake,* 107 Wash. 294, 181 Pac. 685 (1919).

In *Jones v. Matson,* 4 Wn. (2d) 659, 104 P. (2d) 591, 134 A. L. R. 708 (1940), we discussed at some length the classes of survivorship and what constitutes unjust enrichment. Unjust enrichment usually is established by showing that the wrongdoer or his estate received substantially more for a property than it was worth, or that he acquired property for substantially less than it was worth, as in *Kilbourne v. Kilbourne,* 156 Wash. 439, 287 Pac. 41 (1930).

(We find some authorities which have extended the measure of recovery for unjust enrichment to include actual out-of-pocket losses which a plaintiff has sustained, even though there has been no corresponding benefit to the wrongdoer or his estate. These are cases in which rescission was impossible and an effort was being made to put the plaintiff in the position, financially speaking, that he occupied before the transaction. Whether such a measure of recovery is proper in an action for unjust enrichment, we are not called upon to determine, as no evidence of damages was offered on that theory. We refer to it as being the furthest limit to which recovery in an action for unjust enrichment has been pushed.)

Here there is evidence that Tideman had disposed of the property acquired from the Cerkoneks in King county, but no showing as to the amount he received for it. If we take the figures in the contract (and unless we do we have no evidence to indicate what Tideman and his estate received as a result of the transaction with the Cerkoneks), it would appear that Tideman or his estate was to receive nineteen thousand dollars (the Cerkonek property in King county, valued at six thousand dollars, plus thirteen thousand dollars) for the Okanogan property. Accepting the appellants' revised figure of 31 acres under irrigation, the trial court could have found the following values:

| | |
|---|---:|
| 31 acres of irrigated land (at $300 an acre).. | $9,300.00 |
| Buildings (insured for $8,800)............ | 6,500.00 |
| Dry farming land (40 acres at $40 an acre).. | 1,600.00 |
| Timber .............................. | 1,600.00 |
| Total .............................. | $19,000.00; |

which, peculiarly enough, is what their contract states they were paying for the property. These figures do not take into account the value of the remaining 314 acres, which include some pasture land valued at ten dollars an acre. (If there was a misrepresentation as to 9.7 acres (on which appellants base their claim to $2,800, heretofore referred to), the value of the 50.3 irrigable acres of irrigable land could have been found to be $15,090, making a total value of $24,790 plus whatever value the other 274.7 acres may have.)

Appellants brush off the suggestion that the property they secured from Tideman was worth more than the amount they paid (or contracted to pay) for it, with these words:

"There is no merit to respondent's contention that the value of the property is greater than the purchase price. Appellants are entitled to the benefit of their bargain. *Salter v. Heiser,* 39 Wn. (2d) 826. Clearly the estate was unjustly enriched by the difference in value of the property as it is and as represented, *i.e.,* by the amount of appellants' damage."

We have found no authority to support the statement that appellants are entitled, in an action for unjust enrichment, to recover the benefit of their bargain. The authorities are agreed that they waived that right when they elected the remedy of unjust enrichment. Professor Corbin points out (5 Corbin on Contracts 494, § 1112) that the remedy in damages is for the purpose of putting the injured party in as good a position as he would have occupied *had the contract been fully performed, i.e.,* giving him the benefit of his bargain, while the purpose of rescission and restitution is to put the injured party in as good a position as that he occupied *before the contract was made.* Restitution and unjust enrichment are usually linked together. 46 Am. Jur. 99, Restitution and Unjust Enrichment. Restitution is frequently based upon the theory of unjust enrichment. 6 Corbin on Contracts 441, § 1732.

In Keener on Quasi-Contracts 183, it is said that

". . . the measure of the plaintiff's recovery [for unjust enrichment] is . . . the amount which it is against conscience for the defendant to keep."

We fail to see that the Tideman estate has received or will receive anything from the appellants which it would be against conscience for it to keep. The trial court's finding of the ultimate fact that there has been no unjust enrichment of the Tideman estate is amply supported by the evidence and would be decisive of the case even if the fraud had been convincingly established.

We cannot disregard the fact that the appellants flatly charge prejudice and favoritism on the part of the trial judge, in these words:

"A full reading of this oral opinion demonstrates the complete prejudice of the trial judge in his attempt to exculpate a favored local party from the liability which the law clearly imposed upon her under the evidence."

In the portions of his opinion attacked by the appellants, the trial judge was merely suggesting some of the reasons why he was not convinced that the alleged misrepresentation had been made. Having the doubts hereinbefore expressed, we are certainly in no position to say that the trial judge,

who saw and heard the witnesses other than King, should have been convinced by the appellants' uncontradicted evidence on the issue of fraud. But from our study of the record we are in a position to say that we find no basis in the trial court's oral opinion or the record for the charge of prejudice and favoritism leveled by the appellants.

The judgment is affirmed.

GRADY, C. J., MALLERY, WEAVER, and OLSON, JJ., concur.

---

June 9, 1953. Petition for rehearing denied.

