Milton E. DAM and Everett S. Dam, Co-partners doing business under the Firm Name and Style of Dam Brothers, Appellants,

v.

GENERAL ELECTRIC COMPANY, a corporation, Appellee.

No. 15395.

United States Court of Appeals Ninth Circuit.

Nov. 12, 1958.

Phipps & Phipps, Harve H. Phipps, Sr., Harve H. Phipps, Jr., Spokane, Wash., for appellants.

Cooley, Crowley, Gaither, Godward, Castro & Huddleson, John H. Wallace, Edwin E. Huddleson, Jr., William W. Godward, San Francisco, Cal., Hamblen, Gilbert & Brooke, Philip S. Brooke, Spokane, Wash., for appellee.

Before STEPHENS, Chief Judge, and FEE and BARNES, Circuit Judges.

STEPHENS, Chief Judge.

Milton and Everett Dam appeal from a motion for summary judgment granted in favor of General Electric Company by Judge Sam M. Driver in the United States District Court for the Eastern District of Washington.

The Dam Brothers brought suit against General Electric alleging that General Electric had breached an oral contract made with the Dam Brothers in 1913, whereby it was agreed that these two parties would exploit the Priest Rapids area on the Columbia River in the state of Washington. The plaintiffs, Dam Brothers, were interested in the Priest Rapids area for an irrigation project, while General Electric was interested in the area for the development of hydro-electric power. There were obstacles to both plans, so they decided to join forces and develop the area jointly. The terms of the enterprise were allegedly worked out in New York during 1913 with many former executives of General Electric all of whom had died by 1944. The result of these negotiations was that there was an agreement for joint development of Priest Rapids. An attempt was to be made to secure additional land and sites in the area, and to secure passage of favorable water power legislation by Congress which would make it feasible to develop the Priest Rapids site. General Electric was to reward the Dam Brothers by giving them stock of considerable value in a number of corporations which were to be formed upon the passage of favorable legislation. These corporations were to be the vehicles by which the entire area was to be developed.

The records of the Federal Power Commission revealed that the Washington Irrigation and Development Company, pursuant to the Federal Water Power Act of 1920, 16 U.S.C.A. § 791a et seq. applied for a permit for a power project on the Columbia River at Priest Rapids. The trial court assumed for the purpose of the motion for summary judgment that Washington Irrigation was a wholly owned subsidiary of General Electric. A license was issued Washington Irrigation in 1925 with the proviso that construction must be commenced before March 1, 1929. The license was revoked in June of 1929 because construction had not begun as required, and an application for a new license was denied in July of 1930. Thereafter, nothing was done to develop this area, and the Dam Brothers allege that this was because of the generally depressed conditions during the 1930's and the world conflict that followed. However, in 1951 when the Dam Brothers allegedly learned that General Electric had disposed of certain lands in the Priest Rapids area through one of its subsidiaries, a letter was written to General Electric demanding that they perform the joint venture agreement. When there was no response to this demand, this suit was initiated.

It is claimed by the Dam Brothers that because General Electric has failed to fulfill its part of the contract of 1913 that they have been damaged in the amount of $8,500,000. They plead in the alternative also that the defendant General Electric has been unjustly enriched in the same amount.

To all this, General Electric answered and denied all the material allegations of the plaintiffs' complaint, and further alleged by way of affirmative defenses the statute of limitations and/or laches. On the basis of these affirmative defens-

es, they founded their motion for summary judgment which was granted.

The Dam Brothers as appellants allege many grounds for reversal, but basically their claim is that it was error to grant the motion for summary judgment in favor of General Electric, the appellee, because there were many issues of material fact that remain unresolved, and that there should have been a full hearing with witnesses called. The Court considered several affidavits submitted by both sides before granting the appellee's motion for summary judgment. From the evidence before the Court on this motion, the most that appears is that certain efforts were made to secure a license to construct a dam; the license was revoked in 1929, and its renewal denied in 1930. Appellants offer no counter-affidavit to rebut appellee's showing that none of the corporations that were supposed to be created in the furtherance of this joint enterprise were ever formed or ever did business in Washington. As far as appears from the record before the trial court, the last discernible effort was made in 1930. Some twenty-two years later this action was brought, and the only explanation offered by appellants is that conditions were depressed during the 1930's; the war followed, and appellants believed that appellee would perform. The trial court felt that it was clear that after 1930 nothing was ever done by General Electric in the furtherance of this alleged contract, and that sometime shortly after 1930, the contract was breached. We are compelled to agree.

■ In regards the application of summary judgment procedures to this situation, this court has recognized that summary judgment may be used effectively in the area of affirmative defenses, and specifically when the affirmative defense pleaded is the statute of limitations. It is not often that this defense involved a question of material fact, and insofar as summary judgment was used by the trial judge here, it was used properly. Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 170 F.2d 569;

Suckow Borax Mines Consolidated v. Borax Consolidated, 9 Cir., 185 F.2d 196. See also 6 Moore's Federal Practice, 2d Edition, 2261–63. Appellants protest mightily but point to no genuine issue of material fact that was before the trial court.

■ This is a diversity action, and there has been no question but that the law of Washington is applicable to this case. R.C.W. 4.16.080(3) provides as follows: "An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument" must be commenced within three years after the cause of action accrued. See also R.C.W. 19.36.010, the Washington Statute of Frauds, which declares that "every agreement that by its terms is not to be performed in one year from the making thereof" shall be void, unless it is in writing, or evidenced by some memorandum signed by the party to be charged. These statutes apply to the case now before us and are determinative of the issues raised in the first cause of action. And, though the second cause of action proceeds on an unjust enrichment theory, the Washington Supreme Court has clearly held that the three year statute of limitations applies to an action for unjust enrichment. See Halver v. Welle, 44 Wash.2d 288, 266 P.2d 1053; Geranios v. Annex Investments, 45 Wash. 2d 233, 273 P.2d 793. Insofar as the appellants argue that the case before the court is an unusual one demanding the application of equitable principles, the doctrine of laches is certainly an effective bar in this case. As the trial judge stated in his memorandum, [144 F.Supp. 182]

"It is difficult to imagine a litigant being put to more serious disadvantage than to be called upon to defend against an eight and a half million dollar lawsuit based on a 39-year-old oral contract, when the only witnesses who could possibly testify in behalf of the defendant as to whether or not the contract was actually made, and, if so, as

to what were its terms and conditions, have been dead for eight years or more."

See Teeter v. Brown, 130 Wash. 506, 228 P. 291; Kilbourne v. Kilbourne, 156 Wash. 439, 287 P. 41.

The judgment of the District Court is affirmed.

JAMES ALGER FEE, Circuit Judge (concurring in result).

After long study, I concur in the result reached by the opinion of Chief Judge Stephens, solely because plaintiffs cannot recover in any event. It is extremely difficult to find that either count of the complaint could have stated an actionable claim. It is impossible to find basis for a cause of action on the theory of resulting trust. The facts which were of necessity alleged negative any possible recovery. The motions to dismiss should have been sustained.

But the trial court, instead of granting a motion to dismiss, allowed a motion for summary judgment based upon supposed laches and estoppel set up in the answers. But such defenses require the trial of the state of mind of both plaintiffs and defendants. Genuine issues of material fact were thus tried upon affidavits over objection. This is a perversion of the summary judgment procedure.

This case offered a splendid opportunity for disposal on the merits by use of discovery and pretrial conferences. Instead, the weary round of motions and amended pleadings was followed for more than four years. The culmination was a summary judgment upon an untenable ground. The suspicion might arise that the final disposal was on technical grounds and not on the merits. The legal profession and the courts suffer from such suspicions even if these are unfounded.

Because the record shows clearly that plaintiffs could never prevail on the merits, the result reached saves further unnecessary litigation.