[No. 27758. Department Two. July 26, 1940.]

T. P. JONES et al., Appellants, v. ROY A. MATSON et al.,
Respondents.[1]

[1]Reported in 104 P. (2d) 591.

*Richard S. Munter, H. E. T. Herman,* and *Cheney & Hutcheson,* for appellants.

*Harcourt M. Taylor,* for respondents.

JEFFERS, J.—This is an appeal by plaintiffs, T. P. Jones, Roscoe A. Balch, F. J. Rooney, and Warren O. Dow, from a final judgment entered on May 6, 1939, by the superior court for Yakima county, abating and dismissing, by reason of the death of J. M. Perry, an action brought by plaintiffs against the deceased.

The first amended complaint, which was on file at the time of the death of Mr. Perry, and which will hereinafter be referred to as the complaint, alleged in substance as follows: That the York Mines Corporation, at all times mentioned in the complaint, was the owner of certain placer mining property, referred to as the York property; that plaintiff T. P. Jones held an option to purchase such property from the corporation for $115,000; that this option was held by Jones under agreement for the benefit of all the plaintiffs, and that plaintiffs were co-partners and jointly and equally interested in the cost and labor involved and *profits to be earned* through the exercise of the option; that J. M. Perry was the principal stockholder of the corporation, and that, prior to the claimed libelous matter referred to in the complaint, Perry was authorized, by resolution of the stockholders, to complete negotiations with reference to the sale of the mining property to plaintiffs, in accordance with their option to purchase.

It is further alleged that defendant Perry, knowing all these facts for a considerable time prior to the pub-

lishing of the libelous matter referred to, negotiated with plaintiffs and W. H. Abel, who for himself and associates had agreed to help plaintiffs raise finances necessary to exercise such option; that, during the negotiations, plaintiffs were referred to by Perry as "the Spokane outfit;" that such negotiations had proceeded to a point where defendant was apprised of the fact that plaintiffs would exercise their option, when, on July 27, 1937, defendant Perry wrote and mailed to W. H. Abel a letter which contained the following statement:

"Balch and Sheridan came over from Spokane and induced me to loan $17,000 on stock which they never had title to, and for which I could have prosecuted both of them. I fought this thing through two courts, have paid all the expenses for both Balch and myself in a damage suit."

The complaint alleged that the purpose of publishing this false and libelous matter was to prevent Abel and his associates from furnishing plaintiffs with the sum of seventy-five thousand dollars, which Abel and his associates were ready, able and willing to furnish, until the receipt by Abel of such letter; that, because of the libelous matter contained in the letter to Abel, he and his associates refused to furnish the sum of seventy-five thousand dollars, and because of the failure to obtain this money, plaintiffs were unable to avail themselves of their right under their option to purchase the York property and to *gain the profit which would thereby accrue to them.*

The complaint sets out a letter from W. H. Abel to Mr. Perry, in answer to the Perry letter of July 27th, wherein Mr. Abel concludes as follows:

"I have known of you for many years as a cautious business man and I am sure that you would not make a statement in effect charging criminal conduct unless

you could back it up, hence there is nothing for me to do but to decline to proceed further."

The above letter was written by Mr. Abel on August 2nd, and on August 3rd, Mr. Perry answered the letter, reaffirming, as appellants contend, the libelous matter contained in his former letter of July 27th.

It is further alleged in the complaint that plaintiffs had depended upon the ability of W. H. Abel to provide seventy-five thousand dollars for their use in the purchase of the York property and had made no other provision for raising this money, and that, because of the publication of this libelous matter, plaintiffs were unable to procure the seventy-five thousand dollars from other sources; that, at all times prior to the publishing of such libelous matter, each and all of the plaintiffs enjoyed good business reputations, and the partnership referred to as "the Spokane outfit" had and enjoyed a good business reputation.

Paragraph X of the complaint contains allegations from which plaintiffs arrive at the amount of recovery asked for, and are in substance as follows: That W. H. Abel and F. C. Keane were ready and willing to furnish plaintiffs a total of $150,000, to be used by plaintiffs for the recovery of gold of the value of $1,317,447.26; that the property contained gold of the value of $1,317,447.26, as had been demonstrated by the drill record of N. C. Sheridan, a mining engineer, such drill record consisting of a record of drill holes sunk under the direction of Mr. Sheridan, as shown by a map prepared and described as "Map showing churn-drill data of portion of York Mines Corporation . . . ," which holes were drilled over a piece of the mining property approximately forty acres in extent; that the means by which the gold was to be recovered was by the operation of a dredge in the usual manner; that the cost of the dredge set up for opera-

tion would be the sum of $200,000; that the total amounts which it would be necessary to expend in order to make such recovery were: Cost of dredge, $200,000; cost of materials, supplies, labor, etc., $114,-590.70; that the cost of the mining property, in accordance with the option, was $115,000, payable out of gold taken from the property; that there would thus be remaining, after deducting from the gold recoveries the amount needed for purchase of dredge, materials, supplies, and mining property, the sum of $887,856.56; that, under an agreement entered into between plaintiffs and W. H. Abel and F. C. Keane, plaintiffs were to receive fifty per cent of the gold recovered, less one-half of the expense, and W. H. Abel and F. C. Keane and their associates were to receive fifty per cent of the gold recovered, less one-half of the expense; that, by reason of the failure of W. H. Abel and associates to furnish $75,000, as hereinbefore alleged, plaintiffs were unable to exercise their option and did therefore fail to recover gold worth $887,856.56 in excess of the cost of recovering the same, and that plaintiffs were thereby damaged, by reason of their failure to receive one-half of the gold recovered in excess of the cost of recovering same, in the sum of more than four hundred thousand dollars, for which amount plaintiffs asked for judgment against defendant.

The foregoing complaint was on file at the time of the death of defendant J. M. Perry, which occurred on October 1, 1938.

Roy A. Matson and A. S. Coffin were duly appointed and qualified as administrators with the will annexed of the estate of J. M. Perry, deceased, and on November 3, 1938, appeared herein by motion, and asked to be substituted as defendants in this action. On November 5th, an order of substitution was duly made and entered.

On November 10th, Matson and Coffin, as such administrators, filed a motion for order of abatement of the action, based on the records and files appearing in the action.

On or about November 10, 1938, plaintiffs filed a claim against the estate of J. M. Perry, deceased, which claim set forth facts as alleged in the complaint, and also alleged that the estate of J. M. Perry had been enriched by the acts of J. M. Perry, in that stock in the York corporation held and owned by Perry had been increased in value. The above claim was rejected.

On November 26, 1938, plaintiffs filed a motion for substitution and for leave to amend, and also for leave to proceed with the action against the administrators with the will annexed. This motion was supported by the affidavit of Roscoe A. Balch, dated November 12, 1938, which, in addition to setting out many of the facts alleged in the complaint, further averred that the community composed of J. M. Perry and Harriet Perry, his wife, was unjustly enriched at the expense of plaintiffs, in that, by preventing plaintiffs from availing themselves of the benefits of the option, J. M. Perry regained for the York Mines Corporation those property rights to its placer mining property, which were of the value of $887,856.56 more than the sum of money required by the option to purchase, and that the value of the stock of the York Mines Corporation owned by the community consisting of Perry and wife accordingly increased in value on account of and as the result of the wrongful act of J. M. Perry; that the community was enriched to the proportionate extent of $887,856.56, which the ratio of the shares of the corporation stock owned by J. M. Perry and wife bears to the ratio of capital stock of the corporation outstanding.

Plaintiffs, on December 2, 1938, served on counsel for defendants a proposed amended complaint, which,

in addition to the allegations contained in the complaint first herein set out, contained allegations relative to the enrichment of the community referred to in the affidavit of Mr. Balch, and also alleged that the wrongful acts of Perry arose in connection with contract.

The matters came on for hearing before the trial court on the motion of substituted defendants for an order declaring abated the cause of action set forth in the complaint on file at the time of the death of J. M. Perry, and that the action itself abate; and also upon the motion of plaintiffs for substitution, for leave to amend, and for leave to proceed with the action against the administrators. The court, after considering all these pleadings, including the proposed amended complaint, entered a judgment of abatement and dismissal, which judgment concludes as follows:

"It is hereby ordered that the cause of action contained in said amended complaint and proposed amended complaint did abate on the death of said J. M. Perry, deceased.

"It is further hereby ordered, adjudged, and decreed that this action be, and the same hereby is abated and dismissed."

This appeal by plaintiffs followed.

Error is assigned upon the refusal of the trial court to grant leave to amend and leave to proceed with the action against the administrators with the will annexed; upon the granting of defendants' motion for an order of abatement; and in entering a judgment of dismissal.

Appellants contend that the action pending at the time of the death of J. M. Perry, as shown by the allegations of the complaint, was one brought by all of the appellants for damages to the specific contract of option; that the cause of action was in fact founded on contract and survived; and that it was not a libel

action. Appellants further contend that the additional averments contained in the amended complaint, filed after the death of Perry, in no way changed the nature of the action.

Respondents contend that the question of whether or not the action survived should be determined from the complaint on file at the time of the death of Mr. Perry, and that the trial court, in determining this question, should not have considered the amended complaint filed after Perry's death, and the affidavit of Roscoe Balch. While we think there is much that could be said in favor of this contention of respondents, no authority has been called to our attention which convinces us that the trial court improperly considered all the pleadings in arriving at a solution of this matter. Respondents further contend that this is either a libel action or an action for interference with a prospective contract formation by means of libel.

We are of the opinion that this action does not survive unless it appears from the pleadings that it is an action based upon "a tort connected with contract," as that expression has been interpreted, or unless the estate of deceased has been enriched by the claimed wrongful act of deceased.

While it would appear from the memorandum opinion of the trial court that it was conceded by all parties at the hearing that there was no statute in this state covering the situation presented, appellants in their brief make some contention that Rem. Rev. Stat., § 1518 [P. C. § 9886], is applicable herein. We are satisfied that the cited statute is not applicable herein.

There being no statute covering the situation, the common law, so far as it is not inconsistent with the constitution and laws of the United States, or of the state of Washington, nor incompatible with the institutions and conditions of society in this state, shall be

the rule of decision in all the courts of this state. Rem. Rev. Stat., § 143 [P. C. § 8252].

We desire to first consider the question of whether or not the pleadings in this case show that the action is based on a tort connected with contract.

■ "At common law the rule is often stated broadly that causes of action for torts die with the person. More accurately, this rule is limited to torts in the nature of personal wrongs." 1 Am. Jur. 71, § 84.

The same text (p. 71, § 85) states:

"At common law, where a cause of action, though nominally in tort, was founded on a contract, it survives. But the cause of action in tort would not survive against the wrongdoer's legal representative on the ground that it was substantially a contract, unless the wrongdoer, by his wrongful act, acquired *specific property* by which, or by the proceeds of which, the assets of the estate were increased." (Italics ours.)

We have recognized that the common law rule relative to survival prevails in this state. *Warner v. Benham,* 126 Wash. 393, 218 Pac. 260, 34 A. L. R. 1358.

We have recognized the rule that an action based upon tort for unliquidated damages does not survive. *State ex rel. Baeder v. Blake,* 107 Wash. 294, 181 Pac. 685; *Jonas v. Taylor,* 166 Wash. 302, 6 P. (2d) 615. We also recognized the rule referred to in the *Blake* case, *supra,* in the case of *Bortle v. Osborne,* 155 Wash. 585, 285 Pac. 425, 67 A. L. R. 1152, wherein we stated:

"True, at common law all actions in tort did not die with the person. The nature of the cause of action was the test. If the tort were not connected with contract and affected the person only and not the estate, no right of action survived the death of the wrongdoer. *Lee's Adm'r v. Hill,* 87 Va. 497, 12 S. E. 1052; *State ex rel. Baeder v. Blake* [107 Wash. 294], *supra.* . . .

"In order that a right of action arising out of a tort should survive against the personal representative of the deceased tort-feasor, it is essential that the wrong-

doer should, by the wrongful act, have acquired *specific property by which or by the proceeds of which* the assets in the hands of his personal representative are increased. . . .

"Actions in tort, where the tort was not connected with contract or the estate of the tort-feasor was not enriched thereby, were originally designed for the punishment of the wrongdoer. If the tort-feasor died, his personal representative, not having committed in his personal capacity any wrong, could not be prosecuted for such tort. That is the reason of the rule that an action is not maintainable, in the absence of statutory authority therefor, against the personal representative of the deceased wrongdoer, where the tort is not connected with contract or the assets of the estate were not increased by the wrongful act." (Italics ours.)

█ What, then, is the meaning of the term "tort connected with contract," and when can it be said that a tort is so connected with contract that an action based thereon will survive? We have been unable to determine where this expression originated, nor have we been cited to any case which attempts to lay down any rule as to when and under what circumstances a tort is so connected with contract that an action based thereon will survive. We must, therefore, base our conclusion upon what may be said by the text writers and in the cases where the expression is used.

In 1 Cooley on Torts (4th ed.), 168, § 60, the author states:

"Passing now from a consideration of torts as they are found to be akin to or coincident with public wrongs, we may briefly direct attention to another side, on which they seem to be mere breaches of contract. Indeed, in many cases an action as for tort or an action as for a breach of contract may be brought by the same party on the same state of facts. This, at first blush, may seem in contradiction to the definition of a tort, as a wrong unconnected with contract; but the prin-

ciples which sustain such actions will enable us to solve the seeming difficulty.

"If one by means of a false warranty is enabled to accomplish a sale of property, the purchaser may have his remedy upon the contract of warranty, or he may bring suit for the tort. The tort consists in his having been, by fraud and falsehood, induced to make the purchase. There is a broken contract, but there is also something more: There is deception to the injury of the purchaser in procuring the contract to be made. Suit may be brought on the contract, ignoring the fraud; but it may also be brought for the fraud, and then the contract will not be counted on, though it will necessarily be shown, in order to make it appear how the deception was injurious. The tort in such a case is connected with the contract only as it enabled the tort feasor to bring the party wronged into it. . . .

"There are also, in certain relations, duties imposed by law, a failure to perform which is regarded as a tort, though the relations themselves may be formed by contract covering the same ground. The case of the common carrier furnishes us with a conspicuous illustration. The law requires him to carry with impartiality and safety for those who offer. If he fails to do so, he is chargeable with a tort. . . . Where there is a positive duty created by implication of law independent of a contract, though arising out of a relation or state of facts created by the contract, an action in tort will lie for a violation or disregard of that duty."

See *Flessher v. Carstens Packing Co.*, 93 Wash. 48, 160 Pac. 14.

We desire to call attention to the case of *Mueller v. Winston Bros. Co.*, 165 Wash. 130, 4 P. (2d) 854, wherein we commented on the rule to be applied in testing whether a complaint sounds in tort or is based upon contract, and stated that the character of the pleading is to be judged by its allegations, and not by matters stated as mere inducements.

The late case of *Compton v. Evans*, 200 Wash. 125, 93 P. (2d) 341, also deals with this question at some

length, and quotes from the case of *McClure v. Johnson*, 50 Ariz. 76, 69 P. (2d) 573, in regard to the formula to be used in determining whether an action is in contract or in tort. See, also, *Lee v. Fisk*, 222 Mass. 418, 109 N. E. 833.

In *Milwaukee Mutual Fire Ins. Co. v. Sentinel Co.*, 81 Wis. 207, 51 N. W. 440, 15 L. R. A. 627, we find the following rule announced:

"It is elementary that a right of action for mere personal injuries has not the quality of survivorship, is not assignable either at law or in equity, and does not pass to a receiver of the property and effects of the owner of such right of action. Beyond all question, a right of action for a libel belongs to this class. The mere fact that the libel has resulted in pecuniary injury to the plaintiff, and thus has diminished his estate and his capacity to pay his debts, does not make the cause of action one for an injury to property, which passes to the receiver."

While the case of *Burden v. Elling State Bank*, 76 Mont. 24, 245 Pac. 958, 46 A. L. R. 906, does not deal with the question of survivorship, we think it does correctly lay down the rule relative to the liability of one not a party to a contract for willfully and maliciously interfering therewith, in the following language:

"The parties to a contract cannot impose any liability upon a stranger to the contract under the terms of the contract, but 'every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights' . . . ., and 'every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages.' . . . Thus the law, independent of the contract, imposes upon strangers to the contract the duty not to interfere with its performance. The violation of this duty is a tort, the remedy for such interference is by action in tort . . . ., and therefore statutory provisions, respecting

the pleading of the breach of a contract, have no application. The elements of a tort are a wrong committed and damage resulting therefrom (Cooley on Torts, 3rd ed., p. 3), and sufficient allegation showing the manner in which a defendant has committed an actionable wrong against a plaintiff and the resulting damage therefrom states a cause of action *ex delicto.*"

In none of the cases cited, nor in the many others which we have examined, have we found the terms "tort connected with contract," "action on contract," "arising on contract," or "actions *ex contractu,*" applied where the common law rule prevails as to survival of actions to contracts to which the tort feasor was not a party, as in the present case. In almost if not every instance the tort came into existence because of an express contract between the parties, which gave rise to certain obligations and duties between them, from which the law imposed certain additional duties. In this class of cases, the action is said to sound in tort, but to be virtually one in contract. Typical of this class of cases are *Mueller v. Winston Bros. Co., supra,* and *Lee's Adm'r v. Hill,* 87 Va. 497, 12 S. E. 1052, 24 Am. St. 666.

There is also a class of cases where an obligation is implied by statute arising out of relations between the parties. Typical of this class is the case of *Dyer v. Missouri State Life Ins. Co.,* 132 Wash. 378, 232 Pac. 346. There is also a third class of cases, not dependent upon an express contract between the parties, nor one implied by statute, where if one by his wrongful act has acquired specific property, the law imposes on the wrongdoer the duty of returning the property in specie or its value to the owner. This class of cases is considered under the head of "quasi contract." Woodward, The Law of Quasi Contracts, 437, § 270; *Vragnizan v. Savings Union Bank & Trust Co.,* 31 Cal. App. 709, 161 Pac. 507.

Counsel for appellants cite the case of *Bethlehem Fabricators v. H. D. Watts Co.*, 286 Mass. 556, 190 N. E. 828, 93 A. L. R. 1124, as sustaining their contention that the allegations of the pleadings herein show that this case is based upon a tort connected with contract. It is true in the cited case the court allowed a recovery for the interference by the defendant with a contract to which he was not a party; however, we are of the opinion the cited case is not applicable on the facts, nor is it applicable for the reason that recovery was allowed, because of a specific statute which provided for a survival for damages to real or personal property.

We are convinced that the tort alleged to have been committed in the instant case is not connected with or based upon contract. Mr. Perry was not a party to the contract herein, and owed no duty to appellants which could be made the basis of a contractual remedy.

■ Was the estate of deceased enriched by the claimed wrongful act of Perry?

We stated in *Bortle v. Osborne*, 155 Wash. 585, 285 Pac. 425, 67 A. L. R. 1152:

"In order that a right of action arising out of a tort should survive against the personal representative of the deceased tort-feasor, it is essential that the wrong-doer should, by the wrongful act, have acquired *specific property* by which or by the proceeds of which the assets in the hands of his personal representative are increased." (Italics ours.)

We think it is plain, from a reading of the pleadings herein, that no specific property, or the proceeds of specific property, came into the hands of decedent's personal representative. The measure of recovery in a case where the tort has been waived and the action brought on an implied promise, is the value of the property received by the wrongdoer. 6 C. J. S. 1082-3, § 34. The case of *Allis Chalmers Mfg. Co. v. Security Elevator Co.*, 140 Kan. 580, 38 P. (2d) 138, allowed a

recovery on the theory that the person injured might elect to presume a promise on the part of the wrong-doer to pay the party injured. Recovery was allowed in the amount the estate was enriched, which the court stated was the value of the property.

So far as we have been able to determine, the question of enrichment goes back to the case of *Phillips v. Homfray*, 24 Ch. D. 439, 52 L. J. Ch. D. 833 (1883), and the following rule is therein announced:

"The only cases in which, apart from questions of breach of contract, expressed or implied, a remedy for a wrongful act can be pursued against the estate of a deceased person who has done the act, appear to us to be those in which property, or the proceeds or value of property, belonging to another, have been appropriated by the deceased person and added to his own estate or moneys. In such cases, whatever the original form of action, it is in substance brought to recover property, or its proceeds or value, and by amendment could be made such in form as well as in substance. In such cases the action, though arising out of a wrongful act, does not die with the person. The property or the proceeds or value which, in the lifetime of the wrongdoer, could have been recovered from him, can be traced after his death to his assets, and recaptured by the rightful owner there. But it is not every wrongful act by which a wrongdoer indirectly benefits that falls under this head, if the benefit does not consist in the acquisition of property, or its proceeds or value. Where there is nothing among the assets of the deceased that in law or in equity belongs to the plaintiff, and the damages which have been done to him are unliquidated and uncertain, the executors of a wrongdoer cannot be sued merely because it was worth the wrongdoer's while to commit the act which is complained of, and an indirect benefit may have been reaped thereby."

The above rule is also announced in Pollock on Torts (11th ed.), 71.

In our opinion, the only case cited by appellants

where the question of enrichment was raised and discussed, is the case of *Kilbourne v. Kilbourne,* 156 Wash. 439, 287 Pac. 41, and there unquestionably, under the facts, the court was justified in holding the doctrine applied.

Appellants cite *Kangley v. Rogers,* 85 Wash. 250, 147 Pac. 898, and particularly refer to a reference made to the *Kangley* case in *Bortle v. Osborne, supra,* where we stated:

"We followed the rule that the right of action arising out of a tort survives when the assets of the estate are increased by the wrongful act."

The *Kangley* case was an action to recover damages claimed to have been sustained because of failure of a notary public to faithfully discharge the duties of his office and exercise due care in certifying that one Alice A. Gunby, known to him to be the wife of Joseph C. Gunby, personally appeared before him and acknowledged the execution of a real estate mortgage in which the plaintiff was named as mortgagee. Subsequent to the commencement of the action, the notary died, and the action proceeded against his executrix and the surety on his official bond. It was admitted that Alice A. Gunby did not execute the mortgage or appear before the notary and acknowledge its execution, and that her signature was a forgery. No question of enrichment was raised by the pleadings or mentioned in the decision, and therefore, in our opinion, the case can be of no assistance herein.

We are of the opinion the trial court, in its memorandum opinion, correctly analyzed the situation when it stated:

"In order, however, to permit a tort to property, real or personal, to survive, the injury unquestionably must be a direct injury to specific property; and if it is consequential, the action will abate.

"In the instant case the primary wrong consisted in the writing of the two letters; the damages and other injuries were incidental thereto. The first injury was the loss of confidence by Mr. Abel. The injury was complete, so far as the primary wrong was concerned, when that happened. All the other results were purely consequential. The injury to the partnership itself was consequential. The injury was the destruction of Balch's reputation with Abel. The first consequence was the refusal of Abel to proceed further with finances; the second was the inability of the partnership to raise the money elsewhere; the third was their inability to take up their option; the fourth was their inability to get the contract; the fifth was their inability to mine the property and recover the gold; and the last was the loss of profits."

Many cases have been cited by appellants, which we have examined and find not applicable to the facts herein. Respondents have raised several questions not mentioned herein, for the reason that we do not deem it necessary so to do, in view of our conclusion on the questions discussed.

In conclusion, we are of the opinion that the pleadings in this case do not show a direct injury to specific real or personal property; that if any injury is shown to the option contract by reason of the publication of the alleged libelous matter, it was purely incidental; that there was no enrichment of the Perry estate shown; and that this action is in fact an action in tort for unliquidated damages, and therefore abated on the death of Mr. Perry.

The judgment of the trial court is affirmed.

BLAKE, C. J., BEALS, and STEINERT, JJ., concur.