DOLORES ANDERSEN, appellant, v. NATIONAL PRESTO INDUSTRIES, INC. et al., appellees.

No. 51703.

(Reported in 135 N.W.2d 639)

June 8, 1965.

George E. Wright of Patterson & Lorentzen, of Des Moines, for appellant.

Randy Duncan of Duncan, Jones, Riley & Davis, of Des Moines, for appellees.

THOMPSON, J.—This appeal concerns the question of the jurisdiction of state courts over foreign corporations not licensed to do business in the state, and having no registered agent or agents therein. The plaintiff's petition as amended alleged that defendant National Presto Industries, Inc., is a foreign corporation with its principal place of business at Eau Claire, Wisconsin; that it manufactured a coffeemaker, and marketed it; that the plaintiff obtained one of these devices from a dealer in Des Moines, Polk County, Iowa; that it was so defectively devised

and manufactured that the plaintiff was injured while using it. The other defendant, Gold Bond Stamp Company of Iowa, is not involved in this appeal, the action having been dismissed as to it.

It is not disputed that the defendant is a foreign corporation and that it had no registered agent in Iowa upon whom process might be served. In attempting to obtain jurisdiction the plaintiff followed section 617.3, Code of 1962, as amended by chapter 325 of the Acts of the Sixtieth General Assembly. So far as pertinent this section now reads:

"If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, *or if such foreign corporation commits a tort in whole or in part in Iowa against a resident of Iowa,* such acts shall be deemed to be doing business in Iowa by such foreign corporation for the purpose of service of process or original notice on such foreign corporation under this Act, and, if the corporation does not have a registered agent or agents in the state of Iowa, shall be deemed to constitute the appointment of the secretary of state of the state of Iowa * * *."

No contention is made that the plaintiff did not follow the provisions of the Code in serving notice upon the secretary of state. The trial court upheld a special appearance filed by the defendant questioning its jurisdiction, and determined that the defendant is not amenable to suit in Iowa. The plaintiff, thus being left without remedy so far as her action in Iowa is concerned, appeals.

I. The defendant in its written brief states that the sole question involved "is whether the defendant committed a tort, in whole or in part, in the State of Iowa." It would somewhat simplify our discussion if we should take the defendant at its word; but the argument does in fact discuss two points: first, whether a tort was committed in Iowa, and second, whether the commission of one tort, if a tort was in fact committed here, is in itself a sufficient "minimum contact" with the state to justify the manner of obtaining jurisdiction provided by section 617.3 as it now reads. The questions involved may be stated thus: Was a tort committed by the defendant, in whole or in part, within the State of Iowa, within the meaning of section 617.3;

and whether, if the first question is answered in the affirmative, the statute violates fair concepts of due process of law.

II. We address ourselves first to the question whether a tort was in fact committed by the defendant in Iowa. It is its contention that the tort is the affirmative act of negligence itself, and that a resulting injury, if one occurs, is not a part of the tortious act. Few authorities have had the temerity to attempt an all-inclusive definition of the word "tort" which would be applicable in all cases. It is often said a tort is a breach of a duty owed to another; from which the implication is possible that the injury and damage are not part of the tort itself. Other authorities include the injury as an essential part of the tort. It must be kept in mind that we are here dealing with the intent of the legislature in enacting the statute as it presently appears; in particular, what it intended to, and did, say when it used the words "in whole or in part". It must be recognized that the lawmakers had in mind that a tort might be committed in part only in Iowa; that some elements might be found outside the state. This lends some weight to the plaintiff's position, although it is not conclusive.

On the substantial question whether jurisdictional statutes such as our section 617.3 apply to and include torts in which the only part occurring in the state is the resulting injury the authorities are divided. Both plaintiff and defendant are able to cite cases from other jurisdictions which support their positions. For the plaintiff, there are Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888, followed in Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W.2d 824; Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761; and Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A. L. R.2d 1193. The latter case is distinguishable on its facts because it appears that the tortious acts, in addition to the injury, occurred in Vermont. The case is chiefly valuable for its discussion.

In support of its position the defendant cites Rufo v. Bastian-Blessing Co., 405 Pa. 12, 173 A.2d 123; Mann v. Equitable Gas Co., 209 F. Supp. 571; and the English case of George

Monro Ltd. v. American Cyanamide and Chemical Corp., 1 K. B. 432.

The Minnesota and Vermont statutes are, for all substantial purposes, identical with our section 617.3, supra. The Illinois statute, instead of using the word "tort" says "tortious act". The Illinois Supreme Court said (22 Ill.2d at 436, 176 N.E.2d at 763) : "Titan [a defendant] seeks to avoid this result by arguing that instead of using the word 'tort' the legislature employed the term 'tortious act'; and that the latter refers only to the act or conduct, separate and apart from any consequences thereof. We cannot accept the argument. To be tortious an act must cause injury. The concept of injury is an inseparable part of the phrase." It appears that the defendant, conceding arguendo that the word "tort" includes the injury, attempted to distinguish the words "tortious act" actually used; but the Illinois Court held that even these words necessarily included the injury, as used in the Illinois statute providing for means of obtaining jurisdiction over foreign corporation not licensed or having agents in the state.

The Pennsylvania statute under which Rufo was decided was based on "negligent acts or omissions". Whether this is in effect so much different from "a tort in whole or in part", as the Iowa law is worded, that a fair distinction should be drawn we shall not attempt to say. Even accepting the argument that the Pennsylvania and West Virginia Federal District Court holdings and the English authority cited are directly in point, we still must conclude that the Minnesota and Illinois cases cited above are better reasoned and more in line with the modern trend.

Other authorities support this view. Restatement, Conflict of Laws, section 377, says: "The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." The significance of this rule is pointed up in Price v. State Highway Commission, 62 Wyo. 385, 396, 167 P.2d 309, 312, in this language: "Generally speaking and without undertaking in the least an all-inclusive definition a tort has a meaning somewhat similar to wrong and is an unlawful act injurious to another independent of contract." It is

held in Jones v. Matson, 4 Wash.2d 659, 671, 104 P.2d 591, 596, 597, 134 A. L. R. 708: "The elements of a tort are a wrong committed and damage resulting therefrom (Cooley on Torts, 3d Ed., p. 3)." In Hornaday v. Hornaday, 95 Cal. App.2d 384, 213 P.2d 91, it was held that a conspiracy in itself, without resulting harm, did not constitute an actionable tort.

■■ We must assume that the legislature, in wording section 617.3 as it has now done, had in mind an actionable tort, rather than an act which by itself, without resulting injury, would not give a basis for recovery. It is also of considerable importance that the statute says "in whole or in part". It is not a strained or illogical conclusion that the legislature had in mind the exact situation here present, where the negligence occurred in another state, but the injury was inflicted in Iowa. In this situation, adopting what we think is the proper definition of a tort as related to the remedy contemplated by the statute, we think the tort was committed "in part" in Iowa.

Some attention must be given to our own case of Hill v. Electronics Corporation of America, 253 Iowa 581, 589, 113 N.W.2d 313, 318. This case is much relied upon by the defendant, and was apparently thought significant by the trial court. There is specific language therein which we quote:

"Plaintiff suggests these defendants committed a tort in whole or in part in Iowa against a resident thereof and, under this chapter, by such acts were doing business here for the purpose of service of original notice. It is doubtful at best if the alleged tort was committed in whole or in part in Iowa although the injury occurred here. Rufo v. Bastian-Blessing Co., 405 Pa. 12, 173 A.2d 123, 128, 129, and citations. However, we need not decide the point."

The actual holding in the case was that section 617.3 was not retroactive, and since the injury occurred before the enactment of the pertinent amendment to the section it did not govern.

It is evident that the language quoted was no more than obiter dictum. It is clearly so stated. Since the decision of the point was not necessary or in any way involved in the case then under review, no extended consideration was given to it. There

has now been a further significant trend toward the liberalization of the laws pertaining to obtaining jurisdiction over foreign corporations, and we think our decision in the case at bar represents the more logical interpretation of our statute in the light of present-day conditions. Modern means of transportation and communication have greatly altered conditions since the decision in Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, and the power of a state to assert its jurisdiction over nonresidents has been greatly expanded. It is an example of the capacity of the law to grow and change with changing conditions. It was well said in Smyth v. Twin State Improvement Corporation, supra: "Extension of the jurisdiction of courts may be expected to continue in the wake of scientific and economic developments. Facility of travel has largely effaced state lines." Loc. cit. 116 Vt. 575, 80 A.2d 668.

It is true, as Justice Larson said in Iowa-Illinois Gas & Electric Co. v. Fort Dodge, 248 Iowa 1201, 1225, 85 N.W.2d 28, 41, that "No court should be concerned with whether it is 'modern' but whether it is right." It is equally true that change is not always progress; it is possible, often easier, to go backward instead of forward. But we think the reasons set out above justify our approval of the modern trend toward extension of the jurisdiction of the courts over nonresidents.

III. Was there sufficient minimum contact between the defendant and the State of Iowa, and its residents, to justify the application of section 617.3 within the limitations of due process? Only one tort is shown by the pleadings to have been committed here; but this does not entirely answer the question. It is clear that under section 617.3 the commission of one tort in whole or in part in Iowa is sufficient to give jurisdiction. Again, this does not necessarily determine whether the statute in all cases requires sufficient minimum contact to afford due process. International Shoe Co. v. State of Washington, 326 U. S. 310, 319, 66 S. Ct. 154, 159, 90 L. Ed. 95, 103, 161 A. L. R. 1057, is the leading case upholding the authority of a state to secure jurisdiction over one not served with process within its borders. However, it leaves several questions unanswered, one of them being what contact is sufficient. We quote this language: "It is

evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less." In Gray v. American Radiator & Standard Sanitary Corporation, supra, the Illinois Supreme Court was faced with a situation identical with the one found here. Only one actual contact was shown; but the Illinois court said: "We do not think, however, that doing a given volume of business is the only way in which a nonresident can form the required connection with this State. Since the International Shoe case was decided the requirements for jurisdiction have been further relaxed, so that at the present time it is sufficient if the act or transaction itself has a substantial connection with the State of the forum." Loc. cit. 176 N.E.2d 764. In further discussion of the point the same court said: "In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of Titan's business * * * it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State."

In Ehlers v. United States Heating & Cooling Mfg. Corp., supra, which likewise involved only one use of the product in the state of claimed jurisdiction, the Minnesota Supreme Court reached the same conclusion by substantially the same rationalization. It said: "We feel justified, in view of the record, in concluding that the product here involved was manufactured by appellant corporation for use by the general public. It is not contended that the area of foreseeable use of the product was so limited as to exclude the State of Minnesota. The affidavit filed in support of the motions to dismiss did not negate the reasonable inference that the 'Fireball' boiler is a mass-production unit intended for nationwide use." Loc. cit. 267 Minn 61, 124 N.W.2d 827.

So in the case at bar. It is charged that the defendant marketed the coffeemaker; and its affidavit in support of its special

appearance in no way counters the inference that its product was designed for general sale and use not only in its home state of Wisconsin, but generally. It would be flying in the face of reality if we did not admit knowledge that manufactured products are ordinarily designed for commercial sale in whatever markets may be found for them, without regard to state lines. They are placed in the stream of commerce; and when they reach a foreign state they have the protection of its laws. It is not unfair to say they should assume the burdens as well as the benefits.

▮ . Products liability has become an important part of the law of negligence; and the producer of such products who sends them into another state may properly be held to respond for such injuries as they may cause, granted a sufficient showing of negligence and a method of notification adequate to bring to him a timely notice of the suit.

The defendant and some of the authorities place some emphasis upon the inconvenience caused to a nonresident defendant by being compelled to defend a suit in another state. We have pointed out above the greatly expanded means of communication and travel now available, both as to convenience and time. It also appears that the argument is one which is equally cogent in support of the plaintiff's position. If it is inconvenient and expensive to the defendant to go to another state to defend, it is equally so for the plaintiff to prosecute. There is much justice in a holding which places the burden of inconvenience and expense upon the tort-feasor which puts its defective product upon the market in another state and so injures an innocent user, rather than upon the injured party. Convenience or the lack thereof is not in any event a good test for determining jurisdiction; but so far as it has any weight here, the argument is at least as available to the plaintiff as to the defendant.

▮ IV. The defendant urges that section 617.3 provides an extraordinary method of obtaining jurisdiction, and there must be clear and complete compliance with it. This is true; but we are not pointed to any deviation from the exact procedures required by the statute, and the defendant does not claim they were not literally followed. Its contention is based upon

the two points stated in Division I above. These have been answered.

The ruling and judgment of the trial court is reversed, and the cause remanded for further proceedings in conformity with this opinion.

All JUSTICES concur except LARSON, J., who dissents.

LARSON, J.—I respectfully dissent. In Division III of the majority opinion it is stated: "It is clear that under section 617.3 the commission of one tort in whole or in part in Iowa is sufficient to give jurisdiction", and the majority admit this fact does not determine whether the statute in all cases requires sufficient minimum contact to afford due process, citing International Shoe Co. v. State of Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057, as the leading case holding such jurisdiction can be so secured.

As I read the Gray v. American Radiator & Standard Sanitary Corporation case, 22 Ill.2d 432, 176 N.E.2d 761, which the majority says is identical with the one here, one isolated instance was not considered sufficient. Impliedly, at least, there was a volume of Titan business being transacted in Illinois. Here the inference, if it is an inference, is that a trading stamp concern offered the article as a premium, and the defendant did not solicit or transact direct business in Iowa. In other words, the contact came by way of a second or third transfer, and the holding is that no matter how an article comes into a foreign state the foreign state can secure jurisdiction of the manufacturer, by service on the secretary of state, so as to satisfy due process. I am unable to go that far, and would hold plaintiff must allege and prove a substantial use and consumption in this state before such service would be valid. The necessary and basic premise for such jurisdiction, that defendant by act or conduct invokes the benefits and protection of the laws of the forum as clearly set forth in Hanson v. Denckla, 357 U. S. 235, 253, 78 S. Ct. 1228, 2 L. Ed.2d 1283, 1298, does not appear here. Therefore, I believe the trial court was right and would affirm.