**ALABAMA GREAT SOUTHERN RAIL-
ROAD COMPANY**

v.

**ALLIED CHEMICAL COMPANY et al.**

Civ. A. No. 155–69.

United States District Court,

E. D. Virginia,
Richmond Division.

April 15, 1970.

Lewis T. Booker, Richmond, Va., for plaintiff.

Edward A. Marks, Jr., Richmond, Va., Sherwood W. Wise, Jackson, Miss., for defendant, Allied Chemical Co.

Ernest G. Garrett, Jr., Richmond, Va., Wm. F. Goodman, Jr., Jackson, Miss., for defendant Armco Steel Corp.

Edward A. Marks, Jr., Richmond, Va., for defendant, First Union.

James W. Morris, III, Richmond, Va., for defendant, General American.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Alabama Great Southern Railroad Company (hereinafter referred to as AGS) has brought an action in this Court for damages alleged to have been sustained as the result of a derailment of one of its trains in Laurel, Mississippi, on January 25, 1969, jurisdiction being predicated on diversity of citizenship, 28 U.S.C. § 1332(a). Subsequent to the filing of the complaint, the instant issues to which the Court addresses itself came on for attention in the form of pre-trial motions filed on behalf of the corporate defendants.

Defendants First Union Properties, Inc. (hereinafter referred to as First Union) and General American Transportation Corporation (hereinafter referred to as GATX) have moved to quash service of process, contending that the Court cannot acquire *in personam* jurisdiction as to them because allegedly they are not doing business in this district, and that in any event venue is improper in this district.

Defendants Allied Chemical Company (hereinafter referred to as Allied) and Armco Steel Corporation (hereinafter referred to as Armco) have moved the Court to dismiss the action for improper venue or, alternatively, to transfer this action to the United States District Court for the Southern District of Mississippi as a more convenient forum pursuant to 28 U.S.C. § 1404(a).

In the event defendants First Union and GATX fail in their motion to quash service in this Court, they have joined with Allied and Armco in the motion for transfer.

Plaintiff seeks relief on several bases: one, for direct injury to itself flowing from the derailment; two, reimbursements for settlements entered into by the plaintiff with innocent third parties; and, finally, a decree establishing liability, in order that defendants be required to assume the responsibility for actions now pending against AGS by third parties and actions which AGS an-

ticipates will be forthcoming in the future.

AGS predicates the liability of the defendants on theories of negligence, defective design, manufacture and inspection, and breach of warranty.

Allied and Armco bring their "Motion for Transfer" pursuant to the procedural means by which a district court is permitted to transfer civil actions to a different forum if it be "[F]or the convenience of parties and witnesses, in the interest of justice," and the transferee forum is a district or division "where it might have been brought." 28 U.S.C. § 1404(a).

In opposing the transfer motion, AGS contends that the requested transferee forum is not one in which the action "might have been brought." Aside from the equitable considerations to be hereinafter discussed, the United States Supreme Court in Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), held that the transferee forum must be one in which service of process could have been effectuated and federal venue would have been proper had the suit been initially instituted in that forum. See also, Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

■ If these initial prerequisites are not met, the transferor court is without *power* to transfer the action, regardless of equitable reasons adequate to facilitate such transfer. See Goranson v. Capital Airlines, Inc., 221 F.Supp. 820 (E.D.Va.1963).

Defendants advance alternative theories alleged to be sufficient to render defendants amenable to service of process.

Pursuant to Code Miss.1942 § 2729 et seq.,

[T]he chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any contract, express or implied, or arising *ex delicto* against any non-resident, absent or absconding debtor, who has lands and tenements within this state, * * * who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor. The court shall give a decree *in personam* against such non-resident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance. Code Miss. 1942 § 2729.

In 1963, Rule 4 of the Federal Rules of Civil Procedure was amended to allow "for service upon or notice to [a party not inhabitant of or found within the state] to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule." Fed. Rules Civ.Proc. rule 4(e), 28 U.S.C.

Movants argue that First Union and GATX would be amenable to suit under this provision inasmuch as both defendants own rolling stock which is located in Mississippi and therefore subject to attachment proceedings under the statute. Plaintiff, on the other hand, argues that it would be forced to proceed to Mississippi to search for and attach the rolling stock, with no assurance that any stock could be found though a diligent search be made. While the Court agrees with plaintiff that the statutory provision is inadequate for purposes of effectuating a transfer pursuant to 28 U.S.C. § 1404(a), it does so for a different reason.

The statute upon which defendants rely "provides for primarily a suit *in rem* * * *. It is only in cases where personal summons has been served upon the defendant in the state, or where it has entered an appearance, that a personal judgment can be rendered against it." Clark v. Louisville & Nashville Railroad Co., 158 Miss. 287, 130 So. 302, 306 (1930).

■ While possibly true that First Union and GATX may have had rolling

stock located in Mississippi subject to attachment under this provision at the time the suit was instituted in this Court, to require plaintiff to bring such an action would have destroyed the theory upon which he chose to rely—specifically, he seeks an in personam judgment and not a judgment in rem. Indeed, considering the scope of the action, if AGS is successful against either or both defendants, it is unlikely that such property would adequately compensate the injuries sustained. Nor is it persuasive that as a practical matter First Union and GATX, once having their properties subjected to attachment, would come in to defend the same, thereby rendering themselves amenable to personal service. Suffice it to say that such speculation is not allowed by the transfer statute. Consequently, the action brought in this Court, seeking personal judgment against all defendants, was not one which could have been brought in the Southern District of Mississippi as would otherwise be provided by the Mississippi attachment statute.

■ Moreover, the rigidity of the rule will not allow the transfer of a case even though the defendant consents to waiver of venue and personal jurisdiction. As succinctly pointed out by the Court in Hoffman v. Blaski, *supra,* if such "thesis" were adopted, a finding of convenience would allow a District Court to transfer a case at the whim of a de-

fendant, but would discriminatorily restrict that privilege in the case of a moving plaintiff who could not obtain the consent of an unwilling defendant. In the instant case, the injustices may have a greater effect. While the state procedure may be utilized by both parties, thereby reducing the discriminatory effect, the plaintiff's case could be altered, seriously constraining the relief sought. In this regard the movants have not established the worth of First Union or GATX's property located in Mississippi at the time the action was filed. Therefore, allowing the transfer under this statute would effectuate a change in the "civil action" which plaintiff has brought and controvert the proper application of 28 U.S.C. § 1404 (a). See Van Dusen v. Barrack, *supra;* Continental Grain Co. v. The Barge FBL-585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960); Hoffman v. Blaski, *supra.*

Movants urge alternative grounds, however, which they assert would satisfy the "where it might have been brought" requirement of § 1404(a). It is contended the First Union and GATX would have been amenable to in personam jurisdiction under the Mississippi "long-arm" statute.[1]

Single-act provisions find their genesis in the line of cases touched off by the Supreme Court's decision in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[2]

---

1. Any non-resident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of the state to be performed in whole or in part by any party in the state, or who shall commit a tort in whole or in part in this state against a resident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi. Code Miss. 1942 § 1437(a).

2. Expanding technological progress resulting in an enlarged flow of commerce between states caused juridical concepts of

power to render in personam judgments over foreign corporations to be limited not by physical presence within a given territory. See Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), but by whether or not the defendant had "certain minimum contacts with [a state such] that the maintenance of [a] suit [did] not offend 'traditional notions of fair play and substantial justice.'" Internat'l. Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154 at 158. See also, Travelers Health Ass'n. v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); McGee v. Internat'l. Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla,

Particular impetus for their passage flowed from McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).[3]

Realizing the change in jurisdictional philosophy, the states reacted by passing procedural statutes to effectuate service of process on non-resident defendants. Further, a plaintiff seeking to have his claim adjudicated in a federal forum may, pursuant to Fed.Rules Civ.Proc. rule 4(d) (7), 28 U.S.C.A., avail himself of the state service of process statutes to render the nonresident defendant amenable to in personam jurisdiction in the federal court.

While, then, there seems to be an abundance of "long-arm" statutes being passed, the requisite contacts must exist in order that the guidelines espoused in *International Shoe* be satisfied.

The railroad car alleged to have been deficient, thereby causing the resulting injury, was owned by First Union and leased to Allied at the time of the mishap. The initial purchase of the car was made from GATX.

First Union leases its cars for use. It is paid a mileage rate allowance which is deduced from the track miles over which its cars travel. From 1966 through 1968, First Union's receipts from these allowances totalled $105,215,386.00. Of this amount, roughly six percent is attributable to miles traveled over Mississippi tracks. (Answer to Interrogatories).

GATX admittedly does more business in Mississippi than First Union. Six companies in Mississippi lease cars from GATX, which, in the first half of 1969, generated $264,858.00 in revenues. Business, furthermore, is solicited regularly. Other divisions of GATX are also involved in soliciting business in Mississippi. Gross revenues from such businesses are estimated to be $1,000,000.00 yearly. Sales tax returns are annually filed by the company in Mississippi. (Answers to Interrogatories).

In the case of GATX the business done in Mississippi is systematic. By its own admission it is actively seeking to enlarge its business activities in Mississippi. While First Union is not as systematic in its approach to contracting for business in Mississippi as is the case with GATX, its financial ties with Mississippi are certainly continuous. It can be little doubted that the revenues from Mississippi to both corporations are substantial, and its seems eminently fair to assume that if these contacts were not open to them, their respective businesses would undoubtedly suffer. Compare Moore-McCormack Lines, Inc. v. Bunge Corp., 307 F.2d 910 (4th Cir. 1962).

Their contacts are, at the least, "minimal", and they have availed themselves "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958).

More important, perhaps, is the fact that the contacts spoken of are directly involved with the alleged cause of action, and from past experience and volume of business, this contact was not an isolated occurrence but an integral part of both defendants' business. See Kroger Co. v. Adkins Transfer Co., 284 F.Supp. 371 (M.D.Tenn.1968). When considering the limits of due process, these factors are relevant; considering, therefore, the scope of what transpired between the defendants and the proposed transferee forum, GATX and First Union would be amenable, constitutionally, to service of process under the Mississippi "long-arm" statute.

■ Where service is effectuated Fed.Rules Civ.Proc rule 4(d) (7), 28 U.S.C., however, the permissible reach

---

357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

3. The contact giving jurisdiction was the payment of a premium on an insurance policy. It should be noted, however, that the single-act provision, at least in a different context, is not entirely new to our system of jurisprudence. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927).

of process rendering jurisdiction over the person is to be determined by the applicable standard as proclaimed by that state. Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963); Westcott-Alexander Inc. v. Dailey, 264 F.2d 835 (4th Cir. 1959). This restriction becomes particularly relevant in light of the Supreme Court's holding in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), that a state may restrict the applicability of its jurisdictional statutes to a degree less than would otherwise be permissible under the outer limits of the Due Process Clause.[4]

Mississippi has not, however, so far as the Court can ascertain, been called upon to construe the permissible lengths to which her statute may be used to render personal jurisdiction; at least, no situation similar to the facts at hand is available for scrutiny by this Court arising from past cases. Thus, having no precedent from Mississippi upon which to base a decision, the Court must attempt to arrive at a decision consonant with that which, in faith, it believes the state court would reach. Insurance Co.

of North America v. English, 395 F.2d 854 (5th Cir. 1968); Shircliff v. Elliott, 384 F.2d 947 (6th Cir. 1967); New England Mutual Life Ins. Co. v. Mitchell, 118 F.2d 414 (4th Cir. 1941).

The viability of the "single-act" provision of the long-arm statute has been recognized, albeit in dictum, as well as its broadening effect concerning the rendition of personal jurisdiction. Mladinich v. Kohn, 186 So.2d 481 (Miss.1966).

■ Considering, then, the expansion of personal jurisdiction over non-residents and the activities engaged in by First Union and GATX, little doubt is left that the case at hand, primarily brought upon the theory of products liability, is that type of case for which the statute was essentially passed. This Court is of the opinion that Mississippi so intended. The Court is further inclined in this regard inasmuch as the alleged wrongful activity with which defendants are charged is the kind of activity contemplated by the statute.[5]

Nor would subject matter jurisdiction have been destroyed had the action originally been brought in Mississippi. Plaintiff brings its action basing jurisdiction on diversity of citizenship, 28 U.

---

4. It should be pointed out initially that AGS, being domesticated in Mississippi, may avail itself of the "long-arm" statute. C. H. Leavell & Co. v. Doster, 211 So.2d 813 (Miss.1968).

5. Although subject to semantical characteristics of varying degrees, the phrase "tort in whole or in part" would best achieve its intended purpose by allowing the place of injury to suffice to activate the statute. The choice of law issues should not determine where the alleged wrong took place. It would be unsound to predicate jurisdictional decision upon what law the forum must apply if jurisdiction does, in fact, attach in deciding the merits of the case. The injury is certainly an essential ingredient of a tort or a part of the same, and logically, for purposes of jurisdiction, courts construing statutes worded identically in relevant part to that here under consideration have so held. See, e. g., Andersen v. Nat'l. Presto Industries, Inc., 257 Iowa 911, 135 N.W.2d 639 (1965); Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W.2d 824 (1963). See

also, Quigley v. Spano Crane Sales & Service, Inc., 70 Wash.2d 198, 422 P.2d 512 (1967); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), reaching the same conclusion while interpreting statutes requiring a "tortious act."

It should further be pointed out that "tort," as contemplated by the statute, is merely descriptive of the contact required to render one amenable to the statute. See Comment, In Personam Jurisdiction Over Nonresident Manufacturers In Product Liability Actions, 63 Mich.L.Rev. 1028 (1965). And simply a prima facie showing that tortious conduct has occurred need be shown on a jurisdictional motion. See Wright and Miller, Federal Practice and Procedure, Vol. 4 § 1068 (1969). See also, Midwest Packaging Corp. v. Oerlikon Plastics, Ltd., 279 F.Supp. 816 (D.C. Iowa 1968).

While in part the action is one seeking indemnity, the basis for liability is still based upon a theory of tort—the same tort, if proved, for which AGS seeks damages from defendants for its own property damages.

S.C. § 1332, and such basis for jurisdiction would not have been lacking had the action been brought initially in Mississippi.[6]

■ Venue would likewise be properly laid in the Southern District of Mississippi. Pursuant to 28 U.S.C. § 1391(a), "A civil action wherein jurisdiction is founded only on diversity of citizenship may, * * *, be brought * * * in the judicial district * * * in which the claim arose." Accordingly, in view of the injuries sustained in Mississippi, venue would be proper in the transferee court. See Kroger Co. v. Adkins Transfer Co., *supra*.

Once concluding that a court has the requisite power to transfer, the discretionary guidelines set out in the statute [7] must be considered to determine whether or not such power should be exercised.

■ Although seemingly a codification of the doctrine of *forum non conveniens*, the statute is more lenient than the above-mentioned doctrine.[8] For instance, a case is not necessarily dismissed when the facts indicate an inconvenient forum, and, the courts are allowed more leeway in applying the statute in order to facilitate a transfer. Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); Akers v. Norfolk & Western Railway Co., 378 F.2d 78 (4th Cir. 1967). In light of the foregoing, however, the plaintiff's "choice of forum" dictates a showing by the defendant that a transfer is necessitated. Akers v. Norfolk & Western

Railway Co., *supra*; Time, Inc. v. Manning, 366 F.2d 690 (5th Cir. 1966); Crawford Transport Co. v. Chrysler Corp., 191 F.Supp. 223 (D.Ky.1961).

■ The Court has been the recipient of much argument from the parties concerning the necessity or non-necessity to transfer based on the availability of witnesses. Movants have submitted lengthy lists of witnesses, all of whom it is alleged would be of benefit in the presentation of their case. The numbers involved, however, are not decisive on the question of transfer. Wright v. American Flyers Airline Corp., 263 F.Supp. 865 (D.S.C.1967). What is important is the proposed relevance of witnesses' testimony. Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145 (10th Cir. 1967); Morehead v. Barksdale, 263 F.2d 177 (4th Cir. 1959). By affidavit, the moving parties, in conjunction with the witness lists, have indicated that the witnesses will testify to, among other things, speed at the time of derailment; post-derailment injuries; duties concerning track maintenance; modes and procedures of inspection; conditions of the tracks; and, in general, facts prior to, contemporaneous with, and subsequent to the occurrence. When read together with the answer of the defendants Allied Chemical and Armco, it readily appears that such testimony may well be of the utmost relevance. In this regard, it is further desirable that their testimony be given in person. Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744 (S.D.N.Y. 1966); Polaroid Corp. v. Casselman, 213 F.Supp. 379 (S.D.N.Y.1962).

---

6. Plaintiff is an Alabama corporation with its principal place of business in Alabama; Allied is a New York corporation with its principal place of business in New York; Armco is an Ohio corporation with its principal place of business in Ohio; First Union is a Delaware corporation with its principal place of business in Delaware; GATX is a New York corporation with its principal place of business in New York. See 28 U.S.C. § 1332 (c): "For purposes of this section * * * a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business * * *."

7. "For the convenience of parties and witnesses, in the interest of justice, * * *." 28 U.S.C. § 1404(a).

8. *See,* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); while decided on the doctrine of *forum non conveniens*, its discussion of equitable considerations should still be granted great weight in making determinations under § 1404(a).

Plaintiff argues, however, that to transfer the case would render their cause prejudice, inasmuch as some nine witnesses, being in Virginia and Maryland, would not be present in Mississippi to testify as to the negligence issues. Some of these witnesses are undoubtedly "experts," while the bulk of the others are employees of plaintiff who have performed various tests relevant to the issues. The courts are divided on the question of the convenience of expert witnesses in considering § 1404(a) transfers. Compare Forester v. Elk Towing Co., 242 F.Supp. 549 (D.C.Pa. 1965), with Willetts v. General Telephone Directory Co., 38 F.R.D. 406 (S.D.N.Y. 1965). The Court is aware, however, that if the matter is finally litigated, experts for both sides may well come from far distances regardless of the forum. It is further noted that many of the "technical" witnesses which plaintiff intends to use are persons already in the employ of plaintiff. In this regard, there has been no showing that their absence from work would in any way disrupt the plaintiff's business; see Trans-United Industries, Inc. v. Renard Linoleum & Rug Co., 212 F.Supp. 373 (E.D. Pa.1962), and in reference to the alleged undue hardship of transporting such witnesses to Mississippi, a ready answer is contained in plaintiff's not immodest corporate name. See Naftilos Maritime Co., Ltd. v. Tramp Shipping & Oil Transportation Co., 215 F.Supp. 783 D.Minn.1963).

It is also relevant that many claims have been made against AGS in Mississippi, and that the subsequent settlement of some of the same gave rise to an integral part of the pending litigation.

■ It would be in the best interest of all concerned, and inferentially "in the interest of justice," to have the liability, if any, established at the earliest date possible. Thus, docket congestion would appear to be a relevant factor in reference to its effect on the speed in which the cause can be heard, and the cases have so indicated. See, e. g., A. Olinick & Sons v. Dempster Brothers, Inc., 365 F.2d 439 (2d Cir. 1966); Koehring Co. v. Hyde Construction Co., 324 F.2d 295 (5th Cir. 1964). Movants have tendered an affidavit establishing that the relative congestion of the docket in this district as opposed to the stated transferee district as of June 30, 1969, reflects a pending civil docket of 1,265 cases in this district and 417 civil cases in the proposed transferee district. (Mathison affidavit.)

Finally, it is noted that the plaintiff admittedly does no business in Virginia, nor did any contact it might have with Virginia in any way contribute to the events surrounding the pending action. See Thompson v. Capital Airlines, Inc., 220 F.Supp. 140 (S.D.N.Y.1963). If so, it is only incidental, and the Court does not know of, nor has any attempt been made to make the Court aware of such. Indeed, except for the nine witnesses indicated by the plaintiff who reside in Virginia and have previously been discussed, plaintiff's memorandum is dedicated to rebutting movant's allegations but in no way substantiates factually its own position in seeking to prohibit transfer. This factor also should be considered by the Court in determining a usurpation of a plaintiff's choice of forum. See Clayton v. Warlick, 232 F. 2d 699 (4th Cir. 1956).

■ The Court does not reach a decision on the amenability of First Union and GATX to suit in Virginia. Even if it be determined that jurisdiction over the person does not lie in this Court, such finding would not prohibit transfer.

In Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), the Court was presented with the question of whether an absence of jurisdiction over the person prohibited a transfer under 28 U.S.C. § 1406(a).[9] In an-

9. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

swering in the negative it was stated that such reasoning would act as a "time-consuming and justice-defeating technicalit[y]." *Id.* at 467, 82 S.Ct. at 916. At an earlier stage this circuit reached the same conclusion when called upon to interpret § 1404(a). Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514 (4th Cir. 1955). Later cases, subsequent to *Goldlawr*, when called upon to answer the question arising under § 1404(a), have reached a similar result.

It is true that *Goldlawr* involved an interpretation of § 1406(a). Nevertheless, we think that its rationale applies equally to § 1404(a), for these are companion sections, remedial in nature, enacted at the same time, and both dealing with the expeditious transfer of an action from one district or division to another. See Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514 (C.A. 4, 1955). United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964); see also, Koehring Co. v. Hyde Construction Co., *supra.*

Accordingly, consistent with this memorandum, the Court will enter an order granting transfer to the United States District Court for the Southern District of Mississippi.